STATE OF NEBRASKA, EX REL. CONSTANTINE J. SMYTH, ATTORNEY GENERAL, v. GEORGE A. MAGNEY, JOHN D. WARE, HARRY E. BURNAM, AND FREDERICK H. COSGROVE.

FILED NOVEMBER 4, 1897.   No. 9284.

1. **Courts:** JURISDICTION. Section 19, article 6, of the constitution requires that the jurisdiction, powers, proceedings, and practice of the several district courts should be uniform, and so of the county courts and of the justices of the peace. Per NORVAL, J.

2. ———: ———. The words "jurisdiction and powers," in the sense they are employed in the said section 19 of the constitution, embrace not only the subject-matter of the cause, but as well the territory within which a court may act or send process for service, so that the territorial jurisdiction of all courts of the same grade or class must be uniform. Per NORVAL, J.

3. ———: ———: JUSTICES OF THE PEACE. The constitution does not require that the territory within the limits of which the jurisdiction of justices of the peace is restricted shall be of uniform size, but that every such territory shall consist of like political division. Thus, when counties are chosen as a basis of territorial jurisdiction, no other political division can be adopted in part, and when any political division other than counties is made the criterion, to be uniform it must be of all such divisions throughout the state. Per NORVAL, J.

4. ———: ———. It is essential that the territorial jurisdiction of the district and county courts, respectively, shall be uniform. Per NORVAL, J.

5. **Statutes:** MUNICIPAL COURTS: CONSTITUTIONAL LAW. Section 8, chapter 25, Session Laws of 1897, violates the constitutional rule of uniformity of jurisdiction and powers, as regards the district, county, and justices' courts of the state. Per NORVAL, J.

6. **Municipal Courts: Unconstitutionality of Act.** Chapter 25, Session Laws of 1897, an act establishing a municipal court in cities of the metropolitan class, violates section 19, article 6, of the constitution and is void. Per Ragan, C.

7. **Courts: Classification.** The constitution classifies or grades all courts which exist or may exist in the state and the legislature has no authority to alter such classification. Per Ragan, C.

8. ———: **Jurisdiction.** Within the limits of the constitution the legislature may enact laws defining the jurisdiction and powers of all courts in the state, but such a law, to be valid, must be uniform as to all courts of the same grade, wherever situate. Per Ragan, C.

9. ———: ———. The constitution prohibits the legislature from vesting in the county courts or justices of the peace of one county a jurisdiction or power that is not vested in the county courts and justices of the peace of every other county of the state. Per Ragan, C.

10. **Statutes: Construction.** When it is apparent that an unconstitutional section of a legislative act was the sole inducement to the enactment, the whole law will be held void. Per Ragan, C.

11. ———: ———. A legislative act, valid and complete in itself, which contains a provision repugnant to some other existing law, repeals such law by implication. Per Ragan, C.

Original action in the nature of *quo warranto* by the state on relation of the attorney general to oust respondents from offices to which they were appointed under the provisions of chapter 25, Session Laws of 1897, entitled "An act to create a municipal court in cities of the metropolitan class, and to fix and define the organization, powers, and jurisdiction of the same." *Act held unconstitutional and writ of ouster awarded.*

*C. J. Smyth, Attorney General,* and *Ed P. Smith, Deputy Attorney General,* for relator.

*J. J. Boucher,* also for relator:

The act is unconstitutional because it contains two subjects, only one of which is expressed in the title. (Constitution, sec. 11, art. 3; *Ives v. Norris,* 13 Neb., 252; *State v. County Commissioners,* 6 Neb., 474.)

The statute violates the constitutional requirement that

all courts therein enumerated shall be in existence at all times in every part of the state. (Constitution, secs. 1, 18, art. 6; *Bull v. Conroe,* 13 Wis., 233; *State v. Goldstucker,* 40 Wis., 124; *Commonwealth v. Green,* 58 Pa. St., 226; *State v. Leonard,* 86 Tenn., 485.)

The act is void in attempting to take away the civil jurisdiction of justices of the peace, of the county court, and part of the jurisdiction of the district court, in metropolitan cities only. (Constitution, sec. 19, art. 6; *State v. Shropshire,* 4 Neb., 411; *Board of Commissioners v. First Nat. Bank,* 40 Pac. Rep. [Colo.], 894; *Tissier v. Rhein,* 130 Ill., 110; *State v. Berka,* 20 Neb., 375; *Frantz v. Fleitz,* 85 Ill., 367; *State v. Stark,* 18 Fla., 255; *Myers v. People,* 67 Ill., 503; *Foxworthy v. City of Hastings,* 23 Neb., 772.)

The act is void in attempting to make the judges of the municipal court justices of the peace. (*State v. Brunst,* 26 Wis., 412; *Hoke v. Henderson,* 4 Dev. Law [N. Car.], 1; *State v. Wrightson,* 32 Atl. Rep. [N. J.], 820; *People v. Raymond,* 37 N. Y., 428; *Warner v. People,* 2 Denio [N. Y.], 272; *Atkins v. Fraker,* 32 Wis., 510; *Waters v. Langdon,* 40 Barb. [N. Y.], 408; *Commonwealth v. Conyngham,* 65 Pa. St., 76; *Wenzler v. People,* 58 N. Y., 516.)

The act is void in making the term of the judges three years instead of two. (Constitution, sec. 20, art. 6; *State v. Thoman,* 10 Kan., 192.)

The act is void in providing for the election of judges in the spring. All judicial officers must be elected in November. (Constitution, sec. 13, art. 16; *State v. Glenn,* 54 Tenn., 472; *People v. Hurlbut,* 24 Mich., 44; *Speed v. Crawford,* 3 Met. [Ky.], 207; *Geraty v. Reid,* 78 N. Y., 64; *People v. Schiellein,* 95 N. Y., 124; *State v. Wrightson,* 32 Atl. [N. J.], 820; *People v. Raymond,* 37 N. Y., 428; *Warner v. People,* 2 Denio [N. Y.], 272; *Opinion of Judges,* 117 Mass., 603; *People v. Albertson,* 55 N. Y., 57.)

The act is void in attempting to confer territorial jurisdiction coextensive with the county limits. (Constitution, sec. 1, art. 6; *Rockwell v. Raymond,* 5 N. Y. Supp., 642; *Brandon v. Avery,* 22 N. Y., 469; *Waters v. Langdon,* 40

State v. Magney.

Barb. [N. Y.], 408; *Sinkler v. Terry*, 108 N. Y., 1; *Curtin v. Barton*, 139 N. Y., 505; *People v. Upson*, 79 Hun [N. Y.], 87.)

The act is void in providing that the governor shall appoint the first judges, one for nine years, one for six years, and one for three years. (Constitution, sec. 21, art. 6; *People v. Hurlbut*, 24 Mich., 113; *Evansville v. State*, 118 Ind., 426; *State v. Lansing*, 46 Neb., 514.)

The act is void in providing that the city shall furnish offices, furniture, and supplies for the court. This imposes a tax on the municipality. (Constitution, secs. 1, 6, 7, art. 9; *Dorgan v. Boston*, 12 Allen [Mass.], 223; *Hammett v. City of Philadelphia*, 65 Pa. St., 146; *State v. Wheeler*, 33 Neb., 563; *City of San Francisco v. Liverpool Ins. Co.*, 74 Cal., 113.)

*George A. Day, Will H. Thompson,* and *W. H. Herdman,* for respondents:

The bill contains but one subject which is expressed in the title. (*Van Horn v. State*, 46 Neb., 62; *State v. Page*, 12 Neb., 386; *Paxton & Hershey Irrigating Co. v. Farmers & Merchants Irrigation Co.*, 45 Neb., 884; *State v. Bemis*, 45 Neb., 724; *Bonorden v. Kriz*, 13 Neb., 121; *Poffenbarger v. Smith*, 27 Neb., 788; *Hopkins v. Scott*, 38 Neb., 661; *In re Greer*, 48 Pac. Rep. [Kan.], 950; *Gran v. Houston*, 45 Neb., 813.)

References in reply to relator's second point: *Burke v. St. Paul R. Co.*, 28 N. W. Rep. [Minn.], 190; *McDermont v. Dinnie*, 69 N. W. Rep. [N. Dak.], 294; *Commonwealth v. Green*, 58 Pa. St., 226.

The act is not void as destroying the uniformity of practice of the courts. (*State v. Berka*, 20 Neb., 375; *Wales v. Belcher*, 3 Pick [Mass.], 508; *Gilowsky v. Connolly*, 55 Wis., 445; *Wales v. Belcher*, 3 Pick. [Mass.], 508; *Ex parte McCollum*, 1 Cow. [N. Y.], 567; *People v. Garcy*, 6 Cow. [N. Y.], 650; *Board of Commissioners v. First Nat. Bank*, 40 Pac. Rep. [Colo.], 894; *City of Lincoln v. Grant*, 38 Neb., 372; *Smith v. Judge*, 17 Cal., 548.)

References in reply to the contention that the act is void in attempting to make municipal judges justices of the peace: *Gran v. Houston*, 45 Neb., 813; *State v. Moore*, 45 Neb., 12; *State v. Bartley*, 39 Neb., 353.

The statute is not void in making the term of office of the municipal judges three years instead of two. (*County of Douglas v. Timme*, 32 Neb., 272; *Mathews v. Commissioners*, 34 Kan., 606.)

The test as to whether an officer is a state, county or city official seems to be determined by the territory in which the functions of the office are performed, as well as the territory in which the officer is elected. (*In re Carpenter*, 7 Barb. [N. Y.], 30; *People v. Bennett*, 54 Barb. [N. Y.], 480; *Gertum v. Supervisors*, 109 N. Y., 174; *People v. Morrell*, 21 Wend. [N. Y.], 563; *People v. Henry*, 62 Cal., 557; *People v. Garey*, 6 Cow. [N. Y.], 647.)

The argument that the act is void in attempting to confer territorial jurisdiction coextensive with the county cannot be sustained. (*Magneau v. City of Fremont*, 30 Neb., 852; *Bair v. People's Bank*, 27 Neb., 577; *Gertum v. Board of Supervisors*, 109 N. Y., 174; *Glade v. White*, 42 Neb., 338.)

The act should not be held void because it provides that the governor shall appoint the first judges. (*County of Douglas v. Timme*, 32 Neb., 272; *State v. Lansing*, 46 Neb., 530.)

An entire statute should not be declared unconstitutional because a separable portion thereof is invalid. (*State v. Van Duyn*, 24 Neb., 586; *Messenger v. State*, 25 Neb., 674; *In re Groff*, 21 Neb., 647; *State v. Hardy*, 7 Neb., 377.)

NORVAL, J.

The validity of chapter 25, Session Laws, 1897, an act creating a municipal court in each city of the metropolitan class, is assailed by the relator upon nine distinct grounds, of which one alone will be noticed, namely, that section 8 of said act contravenes section 19, article 6, of the constitution of the state, since said section 8, in its

scope, purpose, and effect, attempts to curtail or abridge the jurisdiction and powers of justices of the peace, county and district courts in each county in which a metropolitan city is located.    The section of the constitution invoked by relator requires: "All laws relating to courts shall be general, and of uniform operation, and the organization, jurisdiction, powers, proceedings, and practice of all courts of the same class or grade, so far as regulated by law and the force and effect of the proceedings, judgments, and decrees of such courts, severally, shall be uniform."    (Constitution, art. 6, sec. 19.)

The writer fully concurs in the interpretation given the foregoing provision by RAGAN, C., in his separate opinion herein (*post*, p. 527), namely, that the fundamental law classifies the courts of the state, which classification the legislature is powerless to alter or change, and that any enactment which defines or regulates the jurisdiction and powers of the courts infringes the constitution if such law is not uniform as to all courts of the same grade or class; in other words, that the jurisdiction and powers conferred upon a justice, county, or district court of one county can be neither more nor less than that given the court of the same class in any other county of the state.    The term "class," or "grade," as employed in the constitution, evidently refers to the different kinds of courts established in the state,—that is, all justice courts constitute one class or grade with the same jurisdiction, and that the county and district courts, respectively, belong to a separate class or grade, possessing uniform jurisdiction and powers.    Indeed, the section of the constitution already quoted is too plain to admit of any other or different construction being placed upon it.    The provisions thereof are mandatory and peremptory in their requirements, binding alike upon the legislature and the courts. Counsel for respondents insist with much earnestness and ability that said section of the constitution has not been violated by the enactment of section 8 of the municipal court law, the argument advanced in support thereof

37

being founded upon the proposition that there is no constitutional inhibition or limitation upon the law-making body from excluding the residents of a certain prescribed district from the jurisdiction of the district, county, and justice courts in civil cases; and that neither the jurisdiction, powers, nor organization of any of said courts has been disturbed, or in the least affected, by the act under review. Consideration will now be given to this contention.

What is meant by the "jurisdiction" as employed in section 19, article 6, of the constitution? The Standard dictionary defines the word thus: "1. Lawful power or right to exercise official authority, whether executive, legislative, or judicial. 2. The territory within, or the matter over, which such official authority may be lawfully exercised." Ordinarily the power to hear and determine a matter or cause is jurisdiction. (*Smiley v. Sampson*, 1 Neb., 56; *Johnson v. Jones*, 2 Neb., 126.) It includes not only the power or authority of the courts over the parties and the subject-matter of the action, but the territory within which the power is exercised. It is argued that the term "jurisdiction" should not be given its general accepted signification, but that it was intended to refer to the subject-matter alone. The soundness of this proposition we do not concede. It is a familiar rule that in the interpretation of constitutions, as well as statutes, words are to be given their usual meaning, unless it is manifest that a different sense was intended. There is absolutely nothing in the phraseology of this section of the constitution, standing alone, or when read in connection with the remainder of that instrument, which indicates that the framers employed the word in any limited or restricted sense, and it should not be so construed.

Section 8 of the act under consideration declares:

"The municipal court shall have exclusive original jurisdiction in all civil cases, when the amount in controversy does not exceed one thousand dollars ($1,000) ex-

clusive of interest and costs; in actions of replevin when the appraised value of the property does not exceed one thousand dollars ($1,000), and to recover the possession of real property situated in said city, where the plaintiff or the defendant, or any one of them, is a resident of the city for which such court is established, and service of summons may be had upon all or any one of the defendants in the county in which such court is situated; and concurrent jurisdiction with the district court of the county over all other civil actions involving a sum not exceeding one thousand ($1,000) dollars exclusive of interest and costs. *Provided, however*, the municipal court shall not have jurisdiction: 1. In any action against a public officer for misconduct in office. 2. In actions for malicious prosecution. 3. In actions for slander and libel. 4. In any matter where the title or boundaries to land may be disputed, nor to order or decree the partition, conveyance, or sale of real estate. *Provided, however*, that nothing herein shall be construed to deny or abridge the power of the municipal court to order the sale of land seized in attachment and to confirm the sale so made. *Provided, further*, that nothing contained in this act shall be construed to take away from the county courts any power now possessed by said county courts relative to election contests, the condemnation of real estate, adoption matters, assignments, *habeas corpus*, any powers possessed under chapter 16 or chapter 27a of the Compiled Statutes of Nebraska for the year 1895, nor shall anything contained in this act be construed to confer upon any municipal court created by this act any jurisdiction in any of aforesaid matters." (Session Laws, 1897, ch. 25, sec. 8, p. 195.)

The intention of the legislature is not very aptly expressed in the foregoing. The language employed is so confusing that, to use a trite expression, it would puzzle a Philadelphia lawyer to determine the meaning of some of the provisions, more particularly whether the last sentence of the section took away the jurisdiction attempted

to be conferred upon the municipal court by other portions of the section, or if the prohibited jurisdiction "in any matters where the title or boundaries to land may be disputed," is a limitation upon the power given such court to hear actions to recover real property, or if "the concurrent jurisdiction with the district court of the county over all other civil actions," etc., embraces appeals from county and justice courts where the sum involved does not exceed $1,000, or whether the provision relating to the residence of the parties applies to actions for the recovery of real estate alone, or refers to all causes cognizable in such municipal court.   Accepting as the true legislative intent,—which is conceded by defendants' counsel,—that the restrictions as to the residence of parties is applicable to all actions over which the municipal court has exclusive jurisdiction, the section violates the constitutional requirements of uniformity of jurisdiction and powers of all courts belonging to the same grade or class.

In pursuance of section 18, article 6, of the constitution, there had been conferred, by general law, upon justices of the peace, jurisdiction in certain civil actions coextensive with their respective counties.   (Code of Civil Procedure, secs. 904-907.)   Likewise, in accordance with section 16, article 6, of the constitution, the county courts in the several counties of the state had been given jurisdiction in all civil cases, with certain exceptions, in any sum not exceeding $1,000 exclusive of costs.   (Compiled Statutes, ch. 20.)   The jurisdiction and powers of all said courts belonging to the same class were precisely alike. If section 8 of the act in hand is upheld, then neither every county court nor justice court in the state has the same jurisdiction.   The municipal act seeks to deprive justices of the peace in counties having metropolitan cities of jurisdiction of the subject-matter in certain class of actions where either or both of the parties thereto reside in such city.   It does not merely attempt to take away a part of their former territorial jurisdiction, as

counsel contend. Justice courts in such counties are deprived of jurisdiction over the subject-matter of all civil cases wherein either the plaintiff or defendant is a resident of such city. If nonresidents thereof voluntarily appear, yet the justice would be without power to hear and decide the cause, since parties cannot confer jurisdiction of the subject-matter by consent. (*Stenberg v. State*, 48 Neb., 299.) If justices of the peace in a county wherein is located a metropolitan city cannot lawfully render judgment in the class of causes wherein power to try and determine is conferred upon the municipal court, it is evident said justices have not the same jurisdiction as is confided to all the justices of the peace in the other counties of the state. The act in like manner violates the constitutional requirement of uniformity of jurisdiction in attempting to take away a portion of the then existing jurisdiction of the county courts of the county in which is situated a metropolitan city. The writer is unable to yield assent to the proposition that the jurisdiction of the municipal court is concurrent with that of the district court as to all classes of the cases mentioned in the act. The jurisdiction of the former is concurrent with the latter as to some of the classes, and exclusive as to others. It is exclusive as to the class of cases mentioned in the law where either or both of the parties to the cause reside in such metropolitan city, thus infringing the rule of uniformity to which reference has been made. By section 9 of article 6 of the constitution, district courts have both chancery and common-law jurisdiction, in addition to such other jurisdiction as may be provided by the legislature. And section 24, chapter 19, Compiled Statutes, has conferred upon such courts "general, original, and appellate jurisdiction in all matters, both civil and criminal, except where otherwise provided." Under the constitution and statute in force at the time the act in hand was adopted, the district court of the county wherein a metropolitan city was situated had the same power and

jurisdiction as possessed by every other district court of the state. That this act, if effect is given to its provisions, takes away a portion of the existing jurisdiction of the district court of the county of Douglas, there is no room for doubt. If this act is valid no civil action could be maintained in said court to recover a sum less than $1,000 exclusive of costs and interest, or to recover personal property when the appraised value does not exceed that sum, where either the plaintiff or defendant is a resident of a metropolitan city, while like actions could be successfully prosecuted in the district court of any county in which no such city is situated. This want of uniformity of jurisdiction as to courts of the same class, the constitution prohibits in clear and unmistakable terms. This conclusion finds support in the decisions of the courts of other states.

Section 28, article 6, of the constitution of Colorado, is identical with section 19, article 6, of the constitution of Nebraska. The legislature of Colorado, in 1891, passed a law, of which section 9 thereof provides that in actions pending before the county court of any county of the state belonging to a certain class, litigants must advance jury fees, while in the same courts of other counties having another and different classification no jury fee was required to be advanced. The validity of this law was assailed in *Board of Commissioners v. First Nat. Bank of Aspen*, 40 Pac. Rep., 894, wherein it was held that the act was in conflict with section 28 of article 6 of the constitution of that state. Thompson, J., speaking for the court in said case, after quoting said section of the constitution, observed: "The meaning of this constitutional provision is apparent upon its face. Every law affecting the manner in which justice shall be administered in courts of a given class must apply equally to all of such courts, and their powers shall be the same. All county courts in the state belong to the same class. By the terms of section 9, conditions are imposed in some of these courts, upon the right of a litigant to have his cause

tried by a jury, which are not imposed in others. In counties of the first class the court is given the power to order a jury in a civil action without the advancement of their fees. In all other counties such power is withheld. The language of the constitution upon the subject is unequivocal and mandatory, and section 9 is in direct conflict with its provisions." There the law was declared invalid because it did not provide a uniform practice in the courts of the same class in all the counties. The act we are considering also destroys the uniformity of proceedings and practice required by the constitution as to the courts of the same grade or class.

The supreme court of Illinois frequently has held that the provisions of the constitution of that state in respect to uniformity of jurisdiction of courts of the same grade are mandatory and peremptory in their requirements; that there cannot exist in that state two classes of police magistrates or justices of the peace, two grades of circuit courts, nor two grades of any other court; and that any court of a county must belong to the same class as like courts throughout the state, and that the courts of the same grade must possess the same powers and jurisdiction. (*Phillips v. Quick*, 63 Ill., 445; *People v. Rumsey*, 64 Ill., 44; *O'Connor v. Leddy*, 64 Ill., 299; *Blake v. Peckham*, 64 Ill., 362; *People v. Mead*, 66 Ill., 135.)

The charter of the town of Lewiston passed by the legislature of Illinois gave exclusive jurisdiction to the police magistrate of all cases arising under ordinance of the corporation, and restricted the right of appeal to the circuit court, while the general law of the state conferred jurisdiction upon justices of the peace over all causes for the violation of town ordinances and gave an appeal in all cases to either the circuit or county court. The validity of the provision of the charter adverted to was considered in *Campbell v. Town of Lewiston*, 6 Brad. [Ill. App.], 530, and such provision was held to be in conflict with section 29 of article 6 of the constitution of Illinois, which declares: "All laws relating to courts shall be

general and of uniform operation, and the organization, jurisdiction, powers, proceedings, and practice of all courts of the same class or grade, so far as regulated by law, and the force and effect of the process, judgments, and decrees of such courts, severally, shall be uniform." Higbee, J., speaking for the court, in the course of his opinion, uses this language: "The object of this provision was to establish absolute uniformity in the proceedings of courts of the same class throughout the state. * * * To give the police magistrate of Lewiston exclusive jurisdiction to hear and determine all complaints for violations of the ordinances of the town, while by general law in all other parts of the state, all justices of the peace have jurisdiction over the same class of cases, would be to destroy the uniformity intended to be secured by the constitution; and this objection applies with equal force to the provision of the charter restricting an appeal to the circuit court, when in all other parts of the state an · appeal in such cases could be taken either to that or the county court as the suitor might elect."

A similar construction was given to section 29, article 6, of the constitution of Illinois, in *Markham v. Heffner,* 67 Ill., 101. One John Hart was convicted in the circuit court of Jo Daviess county, Illinois, of a criminal offense committed within the limits of the city of Galena, the exclusive jurisdiction over which class of offenses by the charter thereof, was in the city, while by general law it was conferred upon the circuit court. A reversal was asked upon the ground that the circuit court had no jurisdiction over the subject-matter of the offense. The supreme court, in the case of *Hart v. People,* 89 Ill., 407, affirmed the sentence, saying, after quoting section 29, article 6, of the constitution of that state, that "It is inconsistent with this section of the constitution that after the adoption thereof, exclusive jurisdiction over this offense should be in the city of Galena, and the circuit court of Jo Daviess county not have cognizance thereof. All other circuit courts of the state have jurisdiction of

this offense, when committed in the respective counties of such courts, they having cognizance thereof by indictment in such courts; and if the circuit court of Jo Daviess county be held an exception in this respect, and not to have cognizance of the offense, then its jurisdiction in this respect will be anomalous, and not uniform with that of the other circuit courts of the state. This would be inconsistent with the constitutional provision that the jurisdiction of all courts of the same class or grade shall be uniform."

In discussing the same constitutional provision, Mr. Justice Dickey, in his opinion in *Frantz v. Fleitz*, 85 Ill., 367, observed: "We think the intent of the framers of the constitution is plainly manifested that the powers and jurisdiction of circuit courts, mentioned in article 6, section 1, should be uniform, and so of the county courts (and of the city courts), of the police magistrates, and of the justices of the peace, * * * and that it was never intended that there should be city courts of different powers and jurisdiction any more than it was that there should in the case of circuit courts, county courts, justices of the peace," etc.

In 1881 the legislature of Illinois passed an act extending the jurisdiction of county courts in counties in which probate courts are, or may be, established by conferring upon the county courts in such counties concurrent jurisdiction with the circuit court in all cases at law and in equity, except certain criminal causes. In *Klokke v. Dodge*, 103 Ill., 125, the act was held to be repugnant to that clause of section 29, article 6, of the constitution of Illinois, which declares the jurisdiction "of all courts of the same class or grade" shall be uniform. Mr. Justice Scott, in the course of his opinion, repudiated the proposition that county courts in counties having probate courts are a different class of courts from county courts in counties having no probate courts, and used the following significant and pertinent language: "It is apparent, then, that the county courts in all of the coun-

ties in the state have, and must have, under the constitution, the same powers and jurisdiction, whether probate courts are established in some of them or not, and hence constitute a 'class of courts,' within the meaning of that instrument, concerning which all laws must be general, and of uniform operation. This section of the statute cited, in terms, applies only to county courts in counties in which probate courts are or may be established, giving to such courts concurrent jurisdiction with circuit courts in certain matters in law and in equity. Judicial notice will be taken of the fact but few counties in the state have a population of over fifty thousand inhabitants, and by reason of that fact may have a probate court. It is plain, therefore, that the law that purports to confer increased or extended jurisdiction on county courts in counties where probate courts are or may hereafter be established, applies only to a part of a class or grade of courts, and falls within the inhibition of that clause of section 29, article 6, of the constitution," which declares that the jurisdiction "of all courts of the same class or grade" shall be uniform. To the same effect are the cases of *Meyers v. People*, 67 Ill., 503, and *Weatherford v. People*, 67 Ill., 521.

The contention of respondents is untenable that the uniformity of jurisdiction for which section 19, article 6, of our constitution provides does not embrace territorial jurisdiction. The framers of that instrument intended that the territorial limits of all the courts of the same grade or class should be alike, and restricted the power of the legislature to otherwise enact. Under the constitution the territorial jurisdiction of all justices of the peace must be the same; and so of the county and district courts respectively. If one court is given the authority to issue process to any place and for any person within the county where such court is established, the rule of uniformity of jurisdiction requires that every other court in the state belonging to this same class must possess a like power. By the law in force when the act un-

der consideration was passed, the territorial jurisdiction of a justice of the peace was coextensive with the limits of his county. He could issue a summons which could be lawfully served in any part of the county, and actions might be brought before him by or against persons, wherever might be their residence. The territorial jurisdiction of the district, county, and justices courts, by this act of 1897, in counties in which a metropolitan city was located, is circumscribed, since a summons cannot issue from any of such courts to all parts of the county, in any cause of which the municipal court was given exclusive cognizance. This lack of uniformity of jurisdiction is repugnant to the constitution.

The identical question has been decided by the supreme court of the state of Illinois. The legislature of that state, in 1881, passed an act, which created each county of the state, except Cook county, a district for the election of the justices of the peace, and made two districts of Cook county and limited the jurisdiction of such officers within such districts. The constitutionality of said act was assailed in *People v. Meech*, 101 Ill., 200, upon the ground, among others, that it contravened section 21 of article 6 of the constitution of that state, which provides "that justices of the peace, police magistrates, and constables shall be elected in and for such districts as are or may be provided by law, and the jurisdiction of such justices of the peace and police magistrates shall be uniform." Mr. Justice Walker, in delivering the opinion of the court, used the following apposite language, which the writer adopts as his own: "Of what does the jurisdiction of justices of the peace and police magistrates consist? Manifestly of the persons of the parties litigant, of the subject or thing in dispute, and the territory into which the process of the officer may run and be enforced. We apprehend this is so elementary that it will not be questioned. The justice must have power or jurisdiction to send process into some territory, by the service of which process he may acquire jurisdiction of the

defendant, or the other elements of his jurisdiction would be barren, unless the defendant should voluntarily submit to the jurisdiction for trial. And so of final process, which is absolutely necessary to execute the judgment. His territorial jurisdiction is as essential to the complete administration of justice as either of the others, and the general assembly fully recognizes the power to send process into a district, and to have it enforced therein, as constituting jurisdiction. After prescribing the districts, the act provides, that 'to the limits of which the jurisdiction of all justices of the peace is hereby limited.' It then incontestably follows that the territory in which a justice of the peace may act is essential, and constitutes jurisdiction, and is referred to and embraced in both provisions of the constitution cited above. This, then, being the sense of these provisions, the territorial districts must be uniform. Then what constitutes uniformity, in the constitutional sense? Not literally of one and the same shape or size. That could not have been the purpose; and this is made manifest from the constitution itself. It refers to districts as then existing, or that might thereafter be provided by law. The districts then existing were not of the same form or size, and yet they were adopted by those who framed the constitution. We must, therefore, conclude that such was not the purpose, and for the further reason that if not impracticable, it would have served no useful purpose. Uniformity of territory, then, must refer to some other division of territory. At the time the constitution was adopted the territorial jurisdiction of justices of the peace was coextensive with their counties throughout the state, and has ever been since the organization of the government, and the constitution adopts that division until a change shall be made, which it authorizes, with the limitation that when made the jurisdictional districts shall be uniform. And to be uniform, what does that instrument require? Manifestly, when counties are adopted as a basis of districting, that no other political division but counties can be adopted in

part; or, when townships are adopted as the basis, it must all be by townships, and no other political division can be in part adopted. And so, when any other political division is adopted, to be uniform it must all be of such divisions. This is, we think, the true interpretation of the clause requiring uniformity of jurisdiction, and it follows that the formation of Cook county into two districts, whilst every other county in the state constitutes but one district, is a violation of the constitutional requirement of uniformity."

Section 19, article 6, of our constitution was construed in *State v. Berka*, 20 Neb., 375, but the decision therein does not conflict with the views expressed herein. There was before the court in that case an act of the legislature of 1885, which limited the number of the justices of the peace in cities of the first class to three. It was held that the act did not violate section 19, article 6, of the constitution, since it did not change the organization of justices' courts nor their jurisdiction, powers, proceedings, or practice. That such courts in said cities possessed the same jurisdiction and power as every other justice court in the state is very evident. The act then before the court changed the number of justice courts in certain cities, but did not in any manner affect the jurisdiction of that class of courts, and the law being general and uniform throughout the state, operating the same upon all persons and localities of a class, was upheld. The decision is, therefore, distinguishable from the case before us. The same suggestion is applicable to *Van Horn v. State*, 46 Neb., 62, wherein it was ruled that a provision in a law providing for but one justice of the peace in each township in counties under township organization did not contravene said section 19, article 6, of the constitution.

A mere reference to the cases cited by the respondents will disclose that they do not sustain their contention. In *Burke v. St. Paul, M. & M. R. Co.*, 28 N. W. Rep. [Minn.], 190, involving an act of the legislature of Minnesota creat-

ing a municipal court for the city of Minneapolis with "exclusive jurisdiction * * * of all civil actions and proceedings heretofore cognizable before a justice of the peace, the defendant or garnishee in which resides within the limits of the city of Minneapolis," and which act further provided "that no justice of the peace shall have jurisdiction to issue any summons or process in any civil action (excepting executions), to be served within said city of Minneapolis, and any service of any such summons or process from a justice of the peace made within said city shall be void," the court sustained the law, notwithstanding it reduced the number of justices of the peace in a county and curtailed their powers. The decision would be in point had it been based upon a constitutional provision like section 19, article 6, of our constitution, which was not the case. But two sections of the constitution of Minnesota were before the court, one which declares that "the legislature shall provide for the election of a sufficient number of justices of the peace in each county * * * whose duties * * * shall be prescribed by law," and the other which provides that "judicial powers of this state shall be vested in a supreme court, district courts, courts of probate, justices of the peace, and such other courts inferior to the supreme court as the legislature may from time to time establish by a two-third vote." A mere quoting of those constitutional provisions is enough to indicate that the Minnesota case relied upon is not in point. Similar to the decision just referred to is *In re Greer*, 48 Pac. Rep. [Kan.], 950.

In *Gilowsky v. Connolly*, 55 Wis., 445, it was decided that under the constitution of Wisconsin the legislature could take away from justices of the peace in cities and villages jurisdiction in criminal cases and vest that jurisdiction in other courts. To establish that this decision was rendered under a constitution materially different from that of this state it is sufficient to quote from the opinion of Cole, C. J., wherein the author says: "It would

be difficult to establish the position that the constitution, either expressly or by direct implication, requires that justices of the peace in every town and city in the state should exercise the same measure of jurisdiction." While uniformity of jurisdiction of courts is not demanded by the constitution of that state, nevertheless the learned chief justice expressed a doubt whether the rule of uniformity should not be observed by the legislature, and sustained the enactment principally upon the ground that the legislature from the organization of the state has enacted laws which have ignored the rule of uniformity of jurisdiction of courts. Equally wide of the mark as the last case are the following authorities cited by the respondents: *Wales v. Belcher*, 20 Mass., 508; *Ex parte M'Collum*, 1 Cow. [N. Y.], 567; *Miller v. Plumb*, 6 Cow. [N. Y.], 665; *People v. Judge of the Twelfth District*, 17 Cal., 547. In not one of those cases was there considered a constitutional provision like section 19, article 6, of our constitution, or of similar import. So that these decisions shed no light upon the question involved herein.

Upon principle, as well as authority, the conclusion is irresistible that section 8 of the municipal court act contravenes the constitution, and the entire act is thereby invalidated.    WRIT AWARDED.

RAGAN, C.

The legislature of 1897 passed an act entitled "An act to create a municipal court in cities of the metropolitan class and to fix and define the organization, powers, and jurisdiction of the same." (See Session Laws, 1897, ch. 25, p. 193.) The judges and clerk of the court provided for by the act have been appointed, qualified, and entered upon the performance of their duties. This is a *quo warranto* proceeding brought in this court to test the right of said judges and clerk to the offices which they hold. The question presented is the constitutionality of the act. We have reached the conclusion that the entire act is unconstitutional and void and will now briefly state our reasons for such conclusion.

1. Section 1 of the act creates in each city of the metropolitan class a municipal court. Section 2 provides for the appointment and election of the judges of said court, and section 6, for the appointment of the clerk of the court. Section 8 of the act, so far as material here, is as follows: "The municipal court shall have exclusive original jurisdiction in all civil cases when the amount in controversy does not exceed one thousand ($1,000) dollars exclusive of interest and costs; in actions of replevin when the appraised value of the property does not exceed one thousand dollars ($1,000), and to recover the possession of real property situated in said city, where the plaintiff or the defendant, or any one of them, is a resident of the city for which such court is established; * * * and concurrent jurisdiction with the district court of the county over all other civil actions involving a sum not exceeding one thousand ($1,000) dollars exclusive of interest and costs." By this last section the jurisdiction of the municipal court is limited as follows: To civil cases; to cases in which some party thereto is a resident of the metropolitan city in which is established said court, and in which case the amount in controversy does not exceed one thousand ($1,000) dollars exclusive of interest and costs. But the jurisdiction of the municipal court over the class of cases mentioned in the act is made concurrent with that of the district court of the county, in which is situate the metropolitan city, and exclusive as regards the jurisdiction of all other courts in said county. In other words, the effect of the act is, if valid, to take away the jurisdiction of the county courts and justices of the peace of the county in which is situate a metropolitan city, in the class of civil cases referred to in the act, and vest that jurisdiction exclusively in the municipal court. The act under consideration is not an amendatory one but a complete act in itself; and, if valid, the effect of the act is to repeal the statutes in force at the time of its passage which vested the county court of each county with jurisdiction in civil cases where the

amount in controversy did not exceed one thousand dollars ($1,000); and justices of the peace of each county with jurisdiction in civil cases where the amount in controversy did not exceed $200. (*State v. Moore*, 48 Neb., 870, and cases there cited.) Now section 19, article 6, of the constitution, declares: "All laws relating to courts shall be general and of uniform operation, and the organization, jurisdiction, powers, proceedings, and practice of all courts of the same class or grade, so far as regulated by law,  *  *  *  shall be uniform." At and prior to the passage of the act under consideration, the legislature had provided for the election in each county of the state of a county judge and certain justices of the peace, and these officers were by law given jurisdiction, in a certain class of civil cases, coextensive with the limits of the county in which they were elected. These laws are still in force, and by virtue thereof the jurisdiction of each county judge in the state is the same and the jurisdiction of each justice of the peace is the same. But the effect of the act under consideration is to take away from the county court and the justices of the peace, of counties in which is situate a metropolitan city, jurisdiction over the class of civil cases provided for by the act and vest that jurisdiction exclusively in the municipal court, thus destroying the uniformity of the jurisdiction of the justices of the peace and county courts of the state. True, the constitutional requirement that all laws relating to courts,—their jurisdiction, powers, etc.,—shall be uniform, limits the uniformity required to the same class or grade of courts. But it is to be observed, also, that the constitution itself (section 1, article 6), has classified or graded the courts which exist, or may exist, in the state. They are the supreme court, district courts, county courts, justices of the peace, police magistrates, and courts inferior to district courts for cities and incorporated towns. The supreme court is one grade; the district court is another class or grade; the county courts a third class; justices of the peace a fourth; police magis-

38

trates a fifth, and courts inferior to the district court created for cities and incorporated towns, a sixth class of courts. Where the constitution itself does not fix the jurisdiction of any class or grade of courts, then the jurisdiction and powers of any such class may be regulated by the legislature. But when the legislature attempts to regulate the jurisdiction and powers of the courts of any class or grade, the constitution requires that the jurisdiction conferred upon the class or grade shall be a uniform one; that it shall apply alike throughout the state, —that is to say, the legislature may prescribe, within the limits of the constitution, the jurisdiction of the justices of the peace; but, when it does so, the jurisdiction of one justice must be the same as that of every other justice of the state. Within the limits of the constitution, the legislature may confer certain jurisdiction upon the county courts and upon the district courts, but it cannot confer a different jurisdiction upon the district or county courts of one county from that conferred upon the district courts and county courts of every other county of the state. The legislature has no authority to change the classification of courts made by the constitution. It cannot divide district courts into two or more classes any more than it can say that the district courts west of a certain meridian in the state shall have certain jurisdiction and the district courts east of that meridian shall have a different jurisdiction.

This section 19, article 6, of our constitution, was copied literally from section 29, article 26, Constitution of 1870, state of Illinois. In 1872 the legislature of the state of Illinois passed an act increasing the jurisdiction of the county courts of that state, but the act declared that the provisions thereof should not apply to counties having 100,000 population. The supreme court of Illinois, in *Myers v. People*, 67 Ill., 503, held that the division of the county courts of the state into the two classes attempted by the act was void. The act under consideration here attempts to divide the county courts of the state

into two classes with different jurisdiction. It attempts to divide the justice courts of the state into two classes, with different jurisdiction. This cannot be done. It only remains to be said that it is obvious the deprivation of justices of the peace and county courts, of counties in which are situate metropolitan cities, of jurisdiction in the class of civil cases mentioned in section 8 of the act was the inducement, if not the sole inducement, which led to its passage; and since the validity of the whole act depends upon the validity of said section 8, that being void, the entire act must fall. (*State v. Board of Commissioners of Lancaster County*, 17 Neb., 85; *Bailey v. State*, 30 Neb., 855; *State v. Hurds*, 19 Neb., 317; *State v. Hardy*, 7 Neb., 377.)

A judgment of ouster against the respondents will be entered as prayed.

IRVINE, C., concurs in the result.