**LEVINE et ux. v. ALLEN et al.**

No. 14377—Opinion Filed Dec. 18, 1923.

(Syllabus.)

1. **Courts—Creation—Constitutional Limitations.**

The power of the Legislature to create courts inferior to the Supreme Court is without limitation except as limited by sec-

tion 59, article 5, Williams' Constitution, which provides: "Laws of a general nature shall have uniform operation throughout the state, and where a general law can be made applicable, no special law shall be enacted."

**2. Same—Act Creating Court of Common Pleas.**

Section 1 of chapter 51, Sess. Laws 1923, creating a court of common pleas in all counties of the state having a city therein of over 72,000 and not more than 90,000 population, according to the last preceding federal census, defining its jurisdiction and prescribing the number and qualification of its judges, does not violate section 59, art. 5, Williams' Constitution.

**3. Justices of the Peace—Status as Distinct Class of Courts.**

Under section 1, art. 7, Williams' Constitution, vesting the judicial power of the state in the Senate, a Supreme Court, district court, justices of the peace, and such other courts inferior to the Supreme Court as may be established by law, justices of the peace constitute one distinct class of judicial officers.

**4. Same—Uniformity of Jurisdiction—Necessity.**

The uniformity clause of the Constitution prohibits the Legislature from vesting in justices of the peace of one county a jurisdiction or power that is not vested in the justices of the peace of every other county of the state.

**5. Same—Invalidity of Act Changing Jurisdiction in Certain Counties.**

Section 2, of chapter 51, Sess. Laws 1923, violates the uniformity clause of the Constitution.

**6. Courts—Act Creating Court of Common Pleas—Partial Invalidity.**

By virtue of section 18, of the act, which provides: "The invalidity of any section, subsection, sentence, or clause in or of this act, shall in no manner affect the validity of the remaining portions hereof," the balance of the act is held to be valid.

**7. Courts—Removal of Causes—Legislative Power.**

It is within the constitutional power conferred upon the Legislature of a state to provide by statute for the removal of causes from one court to another.

**8. Prohibition—Refusal of Writ—Jurisdiction of Court of Common Pleas.**

Inasmuch as the action against the petitioners filed in the court of common pleas was an original action within the jurisdiction of the court, it follows that the application for a writ of prohibition must be denied.

Original Application for Writ of Prohibition.

Petition by J. Levine and another against Font L. Allen and others, Judges of the Court of Common Pleas of Tulsa County, and others. Writ denied.

Louis W. Pratt and Robert R. Burns, for petitioners.

Summers Hardy, Biddison & Ladner, Poe & Lundy, Samuel A. Boorstin, and Owen, Yancy & Fist, for respondents.

KANE, J. This is an original application for a writ of prohibition. The petitioners were sued in the court of common pleas of Tulsa county, and they allege that chapter 51, Sess. Laws 1923, creating the court of common pleas in all counties having a city therein of over 72,000 and not more than 90,000 population, according to the last preceding regular decennial federal census, is unconstitutional and void for the following reasons, to wit: First, as to its provisions affecting courts of justices of the peace of Tulsa county; second, as to the transfer of causes from the district court of Tulsa county to the court of common pleas; and, third, as to the special provisions of the act relating to the practice and procedure in the court of common pleas.

The constitutional provisions principally involved are as follows:

Section 1, art. 7, Williams' Constitution, vesting the judicial powers of the state in the Senate, a Supreme Court, district courts, justices of the peace, and such other courts inferior to the Supreme Court as may be established by law.

Sections 46 and 46-(o), art. 5, Williams' Constitution, which provide as follows:

"The Legislature shall not, except as otherwise provided in this Constitution, pass any local or special law: Regulating the practice or jurisdiction of, or changing the rules of evidence in judicial proceedings or inquiry before the courts, justices of the peace, sheriffs, commissioners, arbitrators, or other tribunals, or providing or changing the method for the collection of debts, or the enforcement of judgments or prescribing the effect of judicial sales of real estate."

Section 59, art. 5, Williams' Constitution, which provides as follows:

"Laws of a general nature shall have a uniform operation throughout the state, and where a general law can be made applicable no special law shall be enacted."

The constitutional limitation upon the power of the Legislature to create courts inferior to the Supreme Court, other than those specifically named in the Constitution itself, has often been under consideration in this court. In Chickasha Cotton Oil Company v. Lamb & Tyner, 31 Okla. 275, 114 Pac. 333, it was held:

"It is plain that there is no specific inhibition in the Constitution of this state against the creation of courts inferior to the Supreme Court by local or special act; and the power of the Legislature with respect thereto is without limitation, except as limited by the general provisions of section 59, art. 5, supra. That section requires that no special or local act shall be enacted upon any subject where a general act may be made to apply."

The act involved in Chickasha Cotton Oil Company v. Lamb & Tyner was passed by the Legislature after it had observed all the requirements of the Constitution relating to the enactment of special or local laws, and, therefore, it was not necessary to determine whether the act was general or local and special in its nature in order to pass upon its validity.

In Hatfield v. Garnett, 45 Okla. 438, 146 Pac. 24, the act under consideration provided for a superior court in every county of the state having a population of 33,000 or more and having a city therein of 12,000 or more population as shown by the federal census of 1910, and further provided that in all counties having a population of more than 33,000 and having a city therein with a population of more than 12,000 and less than 15,000 the superior courts should continue until the first Monday in January, 1915. The questions involved were whether the law under consideration was local and special and whether it had uniform operation throughout the state. The act was declared to be local and special legislation, for the reason that the census of 1910 was taken as the fixed and only basis for classification. The Legislature, the court said, might as well have referred by name to the particular counties affected by the act. The act creating the court of common pleas purports to be a general law and does not limit the counties in which such courts are created to counties having a certain population according to the federal census of a particular year, but the basis upon which such court is established is the last preceding federal decennial census, thereby making it clear that it was the intention that the act should be prospective in its operation.

In this regard this case is similar to the case of Burks v. Walker, 25 Okla. 353, 109 Pac. 544, wherein it was held as follows:

The act of the Legislature creating and establishing a superior court in each county of the state having a population of 30,000, and a city therein of 8,000, is general in its nature and uniform in its operation and does not violate section 59, art. 5, of the Constitution.

Other cases more or less in point on this subject are the following: Ex parte Anderson, 33 Okla. 216, 124 Pac. 980; Ex parte Whitehouse, 3 Okla. Cr. 97, 104 Pac. 372; Bishop v. City of Tulsa (Okla. Cr.) 209 Pac. 228; Compton v. City of Muskogee (Okla. Cr.) 21 Appellate Court Rep. 327; Leatherock v. Lawter, 45 Okla. 715, 147 Pac. 324.

In the light of these authorities it is quite clear that section 1 of the act, which creates the court of common pleas, defines its jurisdiction, and provides the number and qualification of its judges, does not violate section 59, art. 5, Williams' Constitution, which provides:

"Laws of a general nature shall have a uniform operation throughout the state, and where a general law can be made applicable, no special law shall be enacted."

But section 2 of the act presents a different and more difficult proposition for solution. This section, which is entitled, "Justices of the Peace, Jurisdiction, Transfer of Cases," provides as follows:

"After this act shall take effect, justices of the peace in any city where a court is hereby established, shall thereafter have no jurisdiction in any case, civil or criminal, except in civil actions, where the amount involved, exclusive of interest and costs, does not exceed one ($1.00) dollar, and except to solemnize marriages. All pending proceedings and judgments in such justice courts shall be transferred to such court of common pleas and further proceedings thereon shall be had as in cases originally filed in said court of common pleas and in judgments obtained therein, except cases wherein said justice of the peace courts would have jurisdiction as here defined. That no case shall be filed in any justice court of said county, outside of said city, against a resident of said city in which such court is created, unless service of summons shall be had on the defendants in the township in which the said justice court is located."

Courts of justices of the peace throughout the state were created by section 18, art. 7, Williams' Constitution, which provides as follows:

"The office of justice of the peace is hereby created, and, until otherwise provided by law, courts of justices of the peace shall have, coextensive with the county, jurisdiction as examining and committing magistrates, in all felony cases, and shall have jurisdiction concurrent with the county court, in civil cases where the amount involved does not exceed $200, exclusive of interest and costs, and concurrent jurisdiction with the county court in all misdemeanor cases in which the punishment does not

exceed a fine of $200 or imprisonment in the county jail for not exceeding 30 days, or both such fine and imprisonment; but justices of the peace shall in no event have jurisdiction in actions for libel and slander."

Heretofore, by general law, the jurisdiction of justices of the peace has been fixed at the maximum indicated above, and this jurisdiction has been uniform throughout the state. It is fairly obvious that if section 2 is allowed to stand, the justices of the peace in the only county of the state where a court of common pleas will be operative under the act will exercise a different jurisdiction than the courts of the same class throughout the state. We are unable to perceive how this can be without violating the uniformity clause of the Constitution.

Diehl v. Crump, District Judge, 72 Oklahoma, 179 Pac. 4, is strongly in point to this effect. In that case, section 1 of the act, which created and established in every county in this state having a population of 19,990, and not to exceed 20,000, according to the last or any future federal census, a court to be known as the superior court, was considered and upheld as a valid general law. On the other hand, section 14 of the same act, which sought to expedite the transfer of causes from the district court to the superior court of Okfuskee county, violated article 5, sec. 59, Williams' Constitution, providing that laws of a general nature shall have a uniform operation throughout the state. In that case the Legislature undertook to compel a transfer of cases by providing for disqualifying the judge of the district court in the particular county in which the superior court was created, in a different manner from that provided by the general laws for the disqualification of district judges throughout the state. The court held that this could not be done, the ruling being based upon the ground that to hold that the Legislature had the power to prescribe one method for disqualifying a district judge in one county or district and another method in another county or district, would tend to destroy the harmony of the judicial system provided for by the Constitution and work interminable confusion in the trial of causes. In other words, the court perceived in the provisions of the Constitution a purpose to require uniformity of jurisdiction among the courts of the same class composing the state-wide system of courts created by the Constitution itself. When this reasoning is applied to the case at bar, it becomes quite clear that an act of the Legislature which would have the effect of conferring upon justices of the peace one jurisdiction in one county and another jurisdiction in another county, and so on throughout the state, would violate the constitutional purpose. It is in the particular just pointed out that our Constitution differs from the constitutions of the states from which come the case of Gilowsky v. Connolly (Wis.) 13 N. W. 44, and the other cases relied on by counsel for the respondents. These cases hold that the constitutional provisions involved do not, either expressly or by direct implication, require that justices of the peace throughout the state shall exercise the same measure of jurisdiction.

On the other hand, in jurisdictions having constitutional provisions similar to our own, the courts uniformly hold that the Legislature has not the power to pass a law which is intended to affect some of the justices of the peace but not all of them. The following are a few of the cases in point to this effect: Love v. Little (Utah) 72 Pac. 185; State ex rel. Smyth, Attorney General, v. Magney et al., 52 Neb. 508, 72 N. W. 1006; State v. Hermann, 75 Mo. 340.

In discussing the question raised in the Nebraska case, the learned Justice who prepared the opinion says:

"Where the Constitution itself does not fix the jurisdiction of any class or grade of courts, then the jurisdiction and powers of any such class may be regulated by the Legislature. But when the Legislature attempts to regulate the jurisdiction and powers of the courts of any class or grade, the Constitution requires that the jurisdiction conferred upon the class or grade shall be a uniform one; that it shall apply alike throughout the state, that is to say, the Legislature may prescribe, within the limits of the Constitution, the jurisdiction of justices of the peace; but when it does so the jurisdiction of one justice must be the same as that of every other justice of the state."

We think this excerpt clearly and correctly states the law applicable to the case at bar. There is some contention that the Nebraska case is not in point because the uniformity clause of the Nebraska Constitution is materially different from ours. It is true that the Nebraska clause is more specific in its terms than ours, but we are unable to perceive any material distinction in the meaning of the two provisions.

It is next contended that section 8 of the act is unconstitutional because the district court is authorized to transfer any causes now pending or which may thereafter be filed therein to the court of common pleas, where the subject-matter and the amount involved falls within the concurrent jurisdiction of both courts. Counsel for the petitioners cite the case of Diehl v. Crump, su-

pra, in support of this contention. In our opinion this contention is wholly untenable.

We concede that it is the law, and Diehl v. Crump, supra, does not hold to the contrary, a mere fact that certain powers or duties may be exercised by a particular court, in this case the district court, does not prohibit the Legislature from creating new courts and conferring upon them like or concurrent powers and duties.

Section 8 of the act under consideration does not attempt to strip the district court of Tulsa county of any of its powers as a court of general jurisdiction or deprive it of the same measure of jurisdiction as that enjoyed by other district courts generally. It merely provides the procedure for transferring causes from the district court to another court of concurrent jurisdiction created by the Legislature.

"'As a general rule, it is within the constitutional power conferred upon the Legislature of a state to provide by statute for the removal of causes from one court to another.'" (15 C. J. 1145.)

It being conceded that the Legislature has the power to create a court of common pleas having concurrent jurisdiction with the district court in certain cases, it would follow as a matter of course that it may also provide procedure for the orderly transfer of causes from one court to the other without infringing upon any of the vested rights of the petitioners.

"A party has no vested right to have his cause heard and finally decided on appeal by the court which, under the law at the time the appeal was taken, had jurisdiction of it, but the state may rearrange its judicial system and reassign the duties of the several courts." (Zellars v. National Surety Company [Mo.] 108 S. W. 548.)

While there are other objections urged against the constitutionality of the law, we do not deem it necessary to examine them in detail. It is sufficient to say that, with the exceptions hereinbefore pointed out, the act is free from constitutional objections.

Section 18 of the act provides as follows:

"The invalidity of any section, subsection, sentence, or clause in or of this act, shall not in any manner affect the validity of the remaining portions thereof."

By virtue of this expression of the legislative purpose, the validity of the act, with the exception of section 2 thereof, may be upheld.

Inasmuch as the action against the petitioners filed in the court of common pleas was an original action within the jurisdiction of the court, it follows that the applica-

tion for a writ of prohibition must be denied.

JOHNSON, C. J., and NICHOLSON, COCHRAN, and MASON, JJ., concur. Mc-NEILL, V. C. J., concurs in conclusion reached.