MORRISON et al. v. FRY et al.

No. 35334.  March 24, 1953.

*255 P. 2d 270.*

Wilson & Leach and Cleo Wilson, Tulsa, for plaintiffs in error.

Lewis J. Bicking, Co. Atty., and Hugh Webster, Asst. Co. Atty., Tulsa, for defendants in error.

JOHNSON, V.C.J. The plaintiffs in error and defendants in error occupy the same relative positions here as in the trial court and hereafter they will be referred to as they there appeared.

There is no dispute as to the facts, as the parties herein submitted the cause to the court upon an agreed statement as to the facts involved, which are substantially that the plaintiffs are the court reporters in the court of common pleas of Tulsa county, Oklahoma; that they instituted this action in mandamus to compel the court clerk, the board of county commissioners and excise board of Tulsa county, Oklahoma, to pay the full amount of the salaries they contend is due them as such court reporters under the provisions of H. B. No. 222 of the 23rd Session of the Oklahoma Legislature, asserting that under the terms thereof they are entitled to be paid $3,900 per year, payable monthly; that $250 each per month is to be paid from the county general fund and $75 each per month shall be paid from the county court fund of Tulsa county, Oklahoma. H.B. No. 222, Session Laws 1951, p. 335, Title 19, §180.42f, O.S. 1951 provides:

"The salary of each of the official court reporters of the County Courts and Courts of Common Pleas in all counties of the State of Oklahoma having a population in excess of one hundred and ninety thousand (190,000) people, according to the last decennial census, shall be Three Thousand Nine Hundred Dollars ($3,900.00) per annum. Three Thousand Dollars ($3,000.00) of which shall be payable monthly from the general fund of the county under the provisions of the statutes of this State, and Nine Hundred Dollars ($900.00) of which shall be payable monthly from the court funds of the county in which said court is located."

It is agreed that Tulsa county has a population in excess of 250,000.

The plaintiffs each filed separate claims for salaries each month after the 1st of May, 1951, when the above act became effective. Each was paid $250 a month from the general fund, but the claims against the court funds

for $75 were denied and payment thereof refused though there were funds available to pay such claims.

The trial court refused to issue a writ of mandamus because the above-quoted act was deemed invalid and in violation of §§46 and 59 of art. 5 of the Constitution of Oklahoma.

From this action of the trial court, plaintiffs appeal.

The constitutional provisions referred to in the court's order denying plaintiffs relief are § 46, art. 5, which prohibits the passage of a local or special law regulating the affairs of the county and §59, art. 5, which requires the uniform operation of general laws and prohibits a special law where a general one can be made applicable.

The paramount question to be determined is: Was H.B. No. 222, supra, invalid because of §§46 and 59 of art. 5 of the Oklahoma Constitution? We think not.

These objections were raised in Simpson v. Butts, 99 Okla. 168, 226 P. 332, and therein this court cited, quoted and approved the rule announced in Levine v. Allen, 96 Okla. 252, 221 P. 771. There we said:

"Defendant first complains that the court erred in overruling his demurrer to the plaintiff's petition, the grounds of said demurrer being that the court of common pleas had no jurisdiction to proceed with the action for the reason that the act creating the said court of common pleas of Tulsa county is repugnant to the Constitution of the State of Oklahoma and wholly void. This court has recently had occasion to pass upon the constitutionality of chapter 51, Session Laws 1923, which is the act creating the court of common pleas of Tulsa county, and has upheld the validity of the act with the exception of section 2 thereof. In Levine et al. v. Allen et al., 96 Okla. 252, 221 P. 771, it is said:

" 'Section 1, of chapter 51, Sess. Laws 1923, creating a court of common pleas in all counties of the state having a city therein of over seventy-two thousand and not more than ninety thousand population, according to the last preceding Federal census, defining its jurisdiction and prescribing the number and qualification of its judges does not violate sec. 59, art. 5, Williams' Constitution.' "

In Lowden v. Oklahoma County Excise Board, 186 Okla. 706, 100 P. 2d 448, we held that the statutes creating offices of public defender and probation officers and providing that the statutes shall apply only to counties having a population of 200,000 or more and containing a city of 175,000 population or more, do not violate the section of the Constitution providing that laws of a general nature shall have uniform operation throughout the state, and that where a general law can be made applicable no special law shall be enacted, notwithstanding that the statutes were in fact applicable to only one county.

In Bell v. Crum, 188 Okla. 67, 106 P. 2d 518, we held that the statute authorizing additional salary for district judges in districts having population in excess of 200,000 and containing a city with population exceeding 100,000 did not violate constitutional provision requiring laws of general nature to have a uniform operation and prohibiting enactment of special laws where a general law can be made applicable, notwithstanding that statute might result in higher salaries for judges in such certain other districts. Therein we also held that the Legislature possessed power to provide for a fund out of which salaries, or a part of the salaries, of district judges, shall be paid, and that such salaries or parts thereof be paid out of a court fund comprised of fees, fines and forfeitures belonging to the respective counties.

In Bell v. Crum, supra, referring to the constitutionality of payment of additional salary of the district judges from court funds of certain counties, we said:

"A more serious question is suggested in connection with the second proposition which we now consider.

"The proposition in substance is that the Legislature was without power to require the appropriation and expenditure of county funds for a state purpose, namely, payment of salaries of state officers.

"A similar question was involved in Herndon v. Anderson et al., supra, 165 Okla. 104, 25 P. 2d 326. Therein the entire salary of the judge of the superior court created by the Act there involved was required to be paid by the counties for which such courts were created.

"This court did not specifically hold that judges of such courts were state officers. It did point out, however, that the superior courts created by said Act unquestionably exercised both state and county functions. So, then, do district courts. Many of the functions and much of the work of the district courts have to do with purely county matters.

"*In the Herndon case, supra, it is held that under our system of government a county is but an involuntary, subordinate political subdivision of the state created to aid in the administration of governmental affairs of the state, and though possessed of a portion of the sovereignty, it has no inherent powers. All the powers entrusted to it are the powers of the sovereignty which created it. It cannot of itself impose taxes. Its powers so to do are derived from the state. A county is without power to create or establish a court fund. The authority, therefore, and the method of raising the fund must come from the state acting through the Legislature. The power to create the fund being in the Legislature it follows that the control of the fund is a legislative function in the absence of constitutional inhibitions.* The Herndon case, supra, cites Steiner v. Sullivan, 74 Minn. 498, 77 N.W. 286, 287, as authority supporting the power of the Legislature to require the county to pay the salary of a superior court Judge. That case is more directly in point in this case than in the Herndon case. The identical question is involved except that it does not appear that the addi-tional salary of the district judge of Ramsey county was to be paid out of a court fund such as we have in this state. There a special tax was imposed, and the Act was upheld. Therein it is said: 'The fact that the judges of the district court of the county of Ramsey belong to the judicial department is no reason why the Legislature might not make the payment of a part of their salaries a charge on the county.'

"In Herndon v. Anderson et al., supra, substantially the same authorities were relied upon to strike down the Act there involved as in the instant case. Plaintiff refers to Steiner v. Sullivan, supra, as an ancient case, and relies largely upon Shelby County v. Six Judges, 3 Tenn. Cas. 508, as followed in Colbert v. Bond, 110 Tenn. 370, 75 S.W. 1061, and Cotham v. Coffman, 111 Ark. 108, 163 S. W. 1183. But this court in Herndon v. Anderson, supra, distinguished those cases and declined by the vote of a divided court to follow those decisions now presented a second time.

"It does not appear that the provisions of the Act here involved contravene any of the provisions of the Constitution." (Emphasis ours.)

The natural sequence of the application of the rules herein discussed is that the Legislature was properly exercising its legislative prerogatives when by the Act in question it created the offices of common pleas court reporter and provided for the payment of a part of their salaries from the county general fund and the balance from the court fund and without further discussion of the rules governing the subject matter of this action, we hold that H.B. No. 222, supra, is not invalid for the reasons assigned by the trial court and that it was error not to grant the relief sought. The judgment is reversed, with directions to vacate same and issue the writ as prayed for by plaintiffs.

HALLEY, C. J., and CORN, WILLIAMS, and BLACKBIRD, JJ., concur. DAVISON and O'NEAL, JJ., dissent.