## WALKER-TAYLOR CO. v. BOARD OF COM'RS OF OKLAHOMA COUNTY.

No. 17140. Opinion Filed June 21, 1927.

(Syllabus.)

Statutes—Invalidity Where Subject-Matter not Clearly Expressed in Title.

Where an act of the Legislature falls within section 57, art. 5, of the Constitution of Oklahoma requiring that the subject-matter thereof be clearly expressed in the title, and such title merely relates to matters wholly incidental to the subject-matter contained therein, and in no manner discloses the vital object and character of the main purposes sought in such act, such title fails to meet the requirements of section 57, art. 5, of the Constitution, and is therefore invalid.

Error from District Court, Oklahoma County; William H. Zwick, Judge.

Action by the Walker-Taylor Company against the Board of Commissioners of Oklahoma County. Judgment for defendant, and plaintiff brings error. Affirmed.

George P. Glaze, for plaintiff in error.

J. K. Wright, Co. Atty., and D. S. Levy, for defendant in error.

LESTER, J. The parties occupy the same relative position as in the district court.

It appears that the court clerk of Oklahoma county, on June 27, 1925, purchased of the plaintiff in error for his office a cer-

tain ledger for the agreed price of $10, and on said date signed a purchase order therefor as required by section 5, ch. 49, Session Laws 1925, and on said date said ledger was delivered to the court clerk at his office in Oklahoma City, and was received and accepted by said court clerk.

Thereafter the plaintiff filed its claim and account, properly verified, in the office of the county clerk of Oklahoma county for the sum of $10, the same being the purchase price of said ledger, and thereafter the said claim came before the board of county commissioners of the county for allowance and payment for the appropriation made for the maintenance of said court clerk's office, the claim and account having been approved by such court clerk, and there being available and on hand from the appropriation made for the maintenance of such office a sufficient sum to fully pay the claim and account. The board of county commissioners refused to allow said claim or order the same paid, but rejected and refused payment thereon.

Thereafter this action was instituted in the district court of Oklahoma county to recover judgment in the sum of $10 against Oklahoma county.

The board of county commissioners answered, admitting all of the allegations of the plaintiff's petition, but denied that the court clerk had any authority to purchase or order such ledger for his office, because section 5, ch. 49, Session Laws 1925, which purported to authorize various county officers to purchase supplies for their said office, is invalid, illegal, and void, being violative of section 57, art. 5, of the Constitution of Oklahoma, for the reason that the subject-matter of said section 5 is not expressed in the title of the act.

The defendant further set up in its answer that the entire chapter 49 of the Session Laws of 1925 is invalid and void for the reason that it is not in the power of the Legislature to transfer from the board of county commissioners to various county officers any of the business and financial duties and powers of the boards of county commissioners as the same existed at the time of the adoption of the Constitution.

Upon the questions of law thus presented, the matter came before the court upon the motion of the plaintiff for judgment on the pleadings, the position of the plaintiff being that, as the defendant had admitted all the allegations contained in the petition, and inasmuch as section 5, ch. 49, Session Laws

1925, and the entire chapter 49 of said Session Laws was a valid and subsisting law of the state, and in full force and effect at the time of the transaction set out in the petition, the plaintiff was entitled to judgment prayed for.

The matter was thus presented to the court on July 29, 30, and August 1, 1925, and on the latter date the court made its finding and judgment to the effect that section 5 of said chapter 49, Session Laws 1925, is unconstitutional, illegal, and void, because the same is in conflict with and violative of section 57, art. 5, of the Constitution, but that all the other sections of said chapter 49 are valid and do not contravene the Constitution of the state, and that the enactment thereof by the Legislature is within the powers of the legislative department.

The plaintiff thereupon excepted to the findings and judgment of the court that section 5 of said chapter 49 is violative of section 57, art. 5, of the Constitution, and at the same time the defendant excepted to the findings and judgment of the court that said chapter 49, Session Laws 1925, as a whole, save and except section 5 thereof, is a valid law, not in contravention of the Constitution of the state, and within the powers of the Legislature.

The plaintiff declining to plead further and electing to stand upon its motion for judgment on the pleadings and petition, the court dismissed the cause and rendered judgment against the plaintiff for the costs of the action.

The plaintiff excepted to the dismissal of the cause and judgment against it for costs and prosecutes this appeal to reverse the action of the district court.

The defendant failed to prosecute a cross-appeal.

The only question presented in this case for review is whether the title to the act in question is sufficient, said act being Senate Bill No. 209, chapter 49, Session Laws 1925.

Section 57, article 5, of the Constitution of Oklahoma, is as follows:

"Every act of the Legislature shall embrace but one subject, which shall be clearly expressed in its title, except general appropriation bills, and general revenue bills, and bills adopting a Code, digest, or revision of statutes; and no law shall be revived, amended, or the provisions thereof extended or conferred by reference to its title only; but so much thereof as is revived, amended, extended, or conferred shall be re-enacted and published at length: Provided, that if any subject be embraced in any act contrary to the provisions of this section, such act shall be void only as to so much of the law as may not be expressed in the title thereof."

The purpose and intent of similar provisions as contained in the Constitution of Oklahoma has been the subject of much discussion by the courts in a large number of the states of the Union.

The Supreme Court of Michigan, in People v. Mahaney, 13 Mich. 481, say:

"The history and purpose of this constitutional provision are too well understood to require any elucidation at our hands. The practice of bringing together into one bill subjects diverse in their nature and having no necessary connection, with a view to combine in their favor the advocates of all, and thus secure the passage of several measures, no one of which could succeed upon its own merits, was one both corruptive of the legislator and dangerous to the state. It was scarcely more so, however, than another practice, also intended to be remedied by this provision, by which, through dexterous management, clauses were inserted in bills of which the titles gave no intimation, and their passage secured through legislative bodies whose members were not generally aware of their intention and effect. There was no design by this clause to embarrass legislation by making laws unnecessarily restrictive in their scope and operation, and thus multiplying their number; but the framers of the Constitution meant to put an end to legislation of the vicious character referred to, which was little less than a fraud upon the public, and to require that in every case the proposed measure should stand upon its own merits, and that the Legislature should be fairly satisfied of its design when required to pass upon it."

The Court of Appeals of New York, in Sun Mutual Insurance Co. v. Mayor of New York, 8 N. Y. 239, declare the object of this provision to be:

"That neither the members of the Legislature nor the people should be misled by the title."

The Supreme Court of Iowa, in State v. County Judge of Davis County, 2 Iowa, 280, say:

"The intent of this provision of the Constitution was to prevent the union, in the same act, of incongruous matters, and of objects having no connection, no relation. And with this it was designed to prevent surprise in legislation, by having matter of one nature embraced in a bill whose title expressed another."

In Re County Commissioners of Counties

Comprising 7th Judicial District, 22 Okla. 438, 98 Pac. 557, this court said:

"The abuses which called such provision into existence are clearly understood, and are twofold. Each subject brought into the deliberation of the legislative department of the government is to be considered and voted on singly, without having associated with it any other measure to give it strength. Experience had shown that measures having no common purpose, and each wanting sufficient support on its merits to secure its enactment, have been carried through legislative bodies and enacted into laws, when neither measure could command or merit the approval of a majority of that body.

"The other abuse against which this provision was leveled was to prevent matters foreign to the main objects of a bill from finding their way into such enactment surreptitiously."

The title to said Senate Bill No. 209, chapter 49, Session Laws 1925, is as follows:

"An Act requiring certain county and municipal officers to keep a record showing the amount appropriated for the maintenance of the various officers and departments of the county and municipal governments, charging expenditures against appropriations at the time purchase is made or contract let and prohibiting the creation of any debt or claim in excess of appropriation"

Section 5 thereof, which was declared invalid by the district court, is as follows:

"The purchase of supplies, equipment, printing and sundry maintenance for the several county and municipal offices shall be made by the officer for whose office or department the appropriation is made available by the excise board; provided, that no indebtedness, claim or obligation for any purpose or on any account shall be incurred in excess of the appropriation as made for that particular or specified purpose; provided, however, that the county and municipal officers referred to herein are hereby made responsible on their official bond for any and all purchases of supplies, equipment, printing and sundry maintenances for their respective offices."

We are here met with the proposition as to whether section 5, supra, is related, germane to, or included within the title of said act.

An examination of the language used in expressing the title to the said act indicates that county officers were to keep a record showing the appropriations made for their offices and to debit all expenditures made therefrom. Also prohibiting the creation of a debt in excess of such appropriation.

The plaintiff in error contends that the language used in the title of said act is sufficient to justify the identification of section 5 of said act, which section has the force and effect of transferring from the county commissioners the power and authority to buy equipment and supplies for the county offices to the county officers. Section 5 of said act has the force and effect of changing the prior fiscal system of the several counties of the state from one purchasing agency to as many as there are county officers in the several counties.

The courts have no authority to interfere with legislative policies. Courts can only inspect an act of the Legislature for the purpose of determining whether such act is in conflict with the Constitution or such act has been passed and enacted according to the provisions of the Constitution, and in the instant case it is our duty and purpose to determine only the question as to whether section 5 of said act was passed in compliance with section 57, art. 5, of the Constitution of the state of Oklahoma.

It would appear from the title of said act that the first duty imposed upon the county officers is that of keeping a correct record of the amount appropriated for such offices and departments, and to deduct therefrom the amount of expenditures made from time to time. Prior to the adoption of this act is was the duty of every public officer having charge of public funds to keep a correct accounting of the same.

The second and last proposition expressed in the title of said act is an inhibition against creating a debt in excess of the appropriation.

Prior to and at the time said act was adopted it was the law of this state that no debt could be created beyond the revenue provided for the several units of government, and no revenue could be raised except for specific purposes, and any debt created in excess thereof was invalid.

Therefore, the title to the act in question did not in any manner suggest any departure from the prior fiscal policy of the state.

The language contained in the title gave assurance to the public that an accounting was to be had for public moneys and prohibiting obligation against the several governmental units of the state beyond the appropriations made therefor.

The title to the act failed to disclose the only change made and departure from the former fiscal policy of the state. A careful examination of the title to said act and its

comparison with section 5 thereof clearly indicates that the said title is simply a smoke screen for purposes designed in section 5.

The manner and authority for the purchase of supplies and equipment for the several county offices and their departments at the time of the passage of the act in question are contained in the following provisions:

Section 5793. C. O. S. 1921, which provides that the board of county commissioners shall have the power as follows:

"* * *. Fourth. To furnish necessary blank books, plats, blanks and stationery for the clerk of the district court, county clerk, register of deeds, county treasurer and county judge, sheriff, county superintendent of schools, county surveyor and county attorney, justices of the peace, and constables, to be paid for out of the county treasury; also a fireproof vault sufficient in which to keep all the books, records vouchers and papers pertaining to the business of the county."

Section 5845, C. O. S. 1921, is as follows:

"The board of commissioners shall, at the expense of the county, provide suitable cases and other furniture for the safe and convenient keeping of all the books, documents and papers belonging to each county officer, and also official seals for each of said officers, where the same are required by law."

In the case of Board of Commissioners of Delaware County et al. v. News-Dispatch Printing & Audit Co., 122 Okla. 107, 251 Pac. 606, this court said:

"Section 5793, Comp. Stats. 1921, expressly authorizes the board of county commissioners to provide, and charges them with the duty of furnishing, the necessary supplies to the various county officers, and it has heretofore been held by this court that this duty cannot be delegated to some other officer, or person, as was apparently attempted to be done in this case. Board of Commissioners of Tulsa County v. News-Dispatch Printing & Audit Co., 104 Okla. 260. 231 Pac. 250; Board of County Commissioners v. Co-operative Publishing Co., 104 Okla. 262, 231 Pac. 251: Edelmann v. Board of County Commissioners, supra; and News-Dispatch Printing & Auditing Co., v. Board of County Commissioners, supra."

Thus we find that at the time the act in question was passed the state was fully committed by statute and the construction thereof by the courts to the policy of allowing the board of county commissioners of the several counties to purchase supplies and equipment for the several county offices.

It was sought by virtue of section 5 of the act in question to change the manner and method of purchasing supplies for the county offices and their departments, and, as hereinbefore stated, the sole question here presented is whether or not the title to said act embraces the said subject of the change therein made under section 5.

In the case of Traders Compress Co. v. Precure, 107 Okla. 191, 231 Pac. 516, this court said:

"Section 57, article 5, of the Constitution provides that every act of the Legislature shall embrace but one subject, which shall be clearly expressed in its title. Under like constitutional provisions it has been universally held that the subject expressed in the title fixes a limit upon the scope of the act. Thayer v. Snohomish Logging Co. (Wash.) 172 Pac. 552; State v. Roby, 142 Ind. 168, 51 Am. St. Rep. 174; Jordan v. Moore (N. J. L.) 82 Atl. 850; Curtis & Hill Gravel Co. v. S.ate Highway Comm. (N. J. Eq.) 111 Atl. 16; Kuhn v Thompson (Mich.) 134 N. W. 722; Inhabitants of Georgetown v. Hanscome & Co. (Me.) 79 Atl. 379; City of Pittsburg v. Reynolds, 48 Kan. 360. And this rule has been recognized by this court in Johnson v. Grady County, 50 Okla. 188, 150 Pac. 497."

In State ex rel. Short v. Johnson, 90 Okla. 21, 215 Pac. 945, this court said:

"But there is a very potent reason lying in the background of this provision which has not heretofore been taken into consideration by this court in passing upon the sufficiency of the title of an act, viz.; In sections 2 and 3, art. 5, of the Constitution, respectively, the initiative and referendum powers are expressly reserved to the people, and section 1, art. 5, contains the following provisions:

" 'But the people reserve to themselves the power to propose laws and amendments to the Constitution and to enact or reject the same at the polls independent of the Legislature, and also reserve power at their own option to approve or reject at the polls any act of the Legislature.'

"Hence, it is seen that in our Constitution the provision, 'Every act of the Legislature shall embrace but one subject, which shall be clearly expressed in its title' (article 5, sec. 57). has a fixed and definite purpose extending beyond the legislative body itself to the people, unto whom is reserved the supreme legislative power. Hence, there was a reason why the framers of the Constitution were not content with the words 'shall be expressed in the title.' or 'shall be described in the title.' etc., ordinarily used by other states but in order to emphasize the importance of this provision, used the words 'shall be clearly expressed in the title.'.

"Hence, it appears that, as the initiative and referendum powers are reserved to the

people, and as the people reserve unto themselves the right to initiate laws and to reject laws enacted by the Legislature, the purpose of this constitutional provision is, not only to give clear notice to the legislative body, but to give clear notice to the people, as to what an act may contain."

Applying the rule as laid down in the former cases of this court, can it be said that the title to a bill, which merely imposes clerical duty upon certain officers and prohibiting illegal contracts, contains any thought or suggestion that the body of the act embodied the transfer of authority to purchase equipment and supplies for the various counties from the board of county commissioners to the county officers?

The right and authority to create a contract is entirely different from that of clerical accounting. The authority to create a contract is distinct from the limitation on a contract. The vital thing that was being done under said act was contained in section 5 thereof, to wit, the transfer of the power and authority given to the board of county commissioners to purchase supplies and equipment for the county offices and to lodge such power and authority in the hands of the several county officers.

No construction should be placed upon section 57, art. 5, which would become highly technical, or made with the view of embarrassing or crippling legislation; in our judgment, the said section should be construed in the light of the instrument itself without any endeavor to render it impotent, or that it be given a broader effect than intended by the language used in said provision.

In the instant case it is clearly evident that the purpose and intent of the subject-matter as contained in section 5 of the act in question is wholly absent from the title to said act, and it is further evident that all other matters mentioned in said act are merely incidental to section 5 thereof.

It is not intended under section 57, art. 5, of the Constitution that an act of the Legislature, embodying highly important subject-matter and of universal concern to the people of the state, should be permitted under the guise of misleading language contained in the title thereof.

In our judgment the main purpose and object of section 5 of said act is wholly obscured and hidden by the language used in the title attached to the said act, and in no manner expresses the character, force, or effect of section 5, which section comprises the only vital force contained in said act, and it is at this character of legislation that

section 57, art. 5, of the Constitution is leveled.

If section 5 of said act were held to be legal, it would encourage the passage of vicious acts which could not be readily detected or discovered by an examination of the title to such acts.

We do not think that it is either difficult or burdensome to require that all acts of the Legislature falling within section 57, art. 5, be given the proper title relating to the vital matters embodied in such acts.

Judgment is affirmed.

BRANSON, C. J., and HARRISON, HUNT, CLARK, RILEY, and HEFNER, JJ., concur.

Note.—See 36 Cyc. p. 1029; 25 R. C. L. p. 847 et seq.; 3 R. C. L. Supp. p. 1431; 4 R. C. L. Supp. p. 1605; 5 R. C. L. Supp. p. 1350; 6 R. C. L. p. 487.