BELL v. CRUM, Court Clerk.

No. 29643.   Oct. 8, 1940.

*106 P. 2d 518.*

Chas. R. Nesbitt, of Tulsa, for plaintiff in error.

Dixie Gilmer, County Atty., John F. Conway, Asst. County Atty., Garrett Logan, and C. H. Rosenstein, all of Tulsa, for defendant in error.

RILEY, J. This action was commenced in the district court of Tulsa county by plaintiff in error wherein he seeks to have defendant in error, as court clerk of Tulsa county, enjoined from paying any part of the district judges' salaries out of the court fund of said county, under the provisions of article 8, ch. 20, S. L. 1936-37, title 71, § 251b, Okla. St. Ann. Section 1 of said act provides:

"In each district court judicial district of this state having a population in excess of 200,000, and a city therein having a population in excess of 100,000, according to the federal census of 1930 or according to any succeeding federal census, each of the district court judges of said district shall receive, in addition to the salary paid him by the state, a salary of three thousand two hundred ($3,200) dollars per annum, payable monthly, to be paid from the court funds of the counties comprising said district court judicial district, in the proportion that each of said counties' population, according to said census, bears to the population of said district."

Plaintiff's second amended petition alleges that defendant is the custodian of the court fund of Tulsa county, and has, since January 1, 1939, paid out of said fund $964.44 each month as part of the salaries of the four district judges of district court, district No. 5-A, of which Tulsa county is a part. That said charge against said fund has been paid under purported authority of said act of the Legislature, and that unless defendant is enjoined from so doing he will continue to pay out of said fund the same amount each month; that said charge is not a proper and lawful charge

against the court fund because the act is unconstitutional and void. It is urged as to the act that:

1. It is a special and local law, and that no notice of intended introduction of said act in the Legislature was published as required by section 32, art. 5, of the Constitution.

2. That said act purports to be a general law, but the population classification upon which it is based is arbitrary, and capricious, and is. not based or founded on any real or substantial distinction or difference in population from that of various other district court districts in the state, in that at least 15 other district court districts in the state the population is greater than in district 5-A, or district 13, as compared to the number of judges in the respective districts. That population is the only basis for the classification; that the jurisdiction, powers, duties, and capacities of the district judges of district 5-A, as applicable either to state or county functions, have in no manner been increased or augmented, but have remained and are identical with those of all other judges in all other districts not included in the act.

That the payment of said additional salaries out of the court fund works irreparable loss and damage to the plaintiff as a taxpayer of said county as well as all other taxpayers therein and to the public.

Defendant's general demurrer to the petition as amended was sustained; plaintiff elected to stand on the petition, the action was dismissed, and plaintiff appeals.

It is conceded that a single question of law is involved, and that is the validity and constitutionality of article 8, ch. 20, S. L. 1936-37.

It is first contended that the act in question violates sections 1 and 9 of article 7 of the Constitution, providing for the creation of district courts, qualifications of the judges, establishment of districts, and that it violates section 16

of the Schedule of the Constitution, fixing salaries of Supreme Court and district court judges.

Section 9, of art. 7, of the Constitution does provide for division of the state into judicial districts, and also fixes the qualifications of district judges, and the term of office, but there is no provision therein fixing salaries of district judges. There is no provision in the act here involved which in any way changes the qualifications or term of office of district judges, and nothing which diminishes or enlarges jurisdiction or powers of district courts.

Plaintiff argues that district judges are state officers and a part of the judicial system of the state. But that fact does not render the act in question violative of section 9, art. 7, of the Constitution.

Section 1, art. 7, of the Constitution vests the judicial power of the state in certain tribunals therein mentioned, and such other courts, commissions, or boards inferior to the Supreme Court as may be established by law. The act in question in no way contravenes the provisions of said section.

Section 16 of the Schedule does fix the salaries of district judges, at $3,000 per annum each, but that provision is that the salaries are fixed at that sum only until changed by the Legislature. This power has been exercised by the Legislature many times since the Constitution was adopted. There is nothing in the Constitution which requires that salaries of district judges shall be uniform throughout the state.

Under the third proposition plaintiff contends that the act in question violates section 6, art. 2, of the Constitution, which provides:

"The courts of justice of the state shall be open to every person and speedy and certain remedy afforded for every wrong and for every injury to person, property or reputation; and right and justice shall be administered without sale, denial, delay or prejudice."

There is nothing in the act in question which in any way tends to close the courts against any person or class of persons in the districts affected, or in any way restricts or limits the remedies afforded by law to any person deeming himself wronged or his person, property, or reputation injured, and nothing by which the administration of justice without sale, denial, or prejudice is or may be restricted or limited. It is argued that because fees, fines, and forfeitures, which are property of the county, go into the court fund out of which the additional salaries of district judges within the districts affected are paid, the judges are likely to assume a personal interest in these elements of the court fund. 62 Okla. Stat. Anno. §§ 321-323, S. L. 1935, p. 174.

The act in question does not provide for collection of any fees, fines, or forfeitures not provided for by law before the passage of the act and applicable throughout the state. Fees are fixed by statute. Forfeitures as matters of law are reviewable. The court fund is shown by plaintiff in error's brief to be replaced or supplemented by ad valorem tax levy, so that this fund is not exclusively made up of such items as fines in amounts limited by statutes and assessed by judges. It is the duty of the courts everywhere, including court clerks, to observe the law relative to taxation of costs, collection of fees, fines, and forfeitures, without favor.

Ample remedy is afforded for any abuse of the powers or violation of the law by courts or their clerks. The supervisory power of this court over all inferior tribunals, together with the laws for removal of officers, afford remedy against the possible abuse of power suggested by plaintiff.

There is no merit in the contention that the act in question violates section 6, art. 2, of the Constitution.

The fourth proposition presented is that since the act attempts to provide, by special application of a general law, for a higher salary for judges in certain

districts, in which the ratio of population to the number of judges is lower than in other districts, not affected, it constitutes an express violation of section 59, art. 5, of the Constitution, which provides:

"Laws of a general nature shall have a uniform operation throughout the state, and where a general law can be made applicable, no special law shall be enacted."

It must be conceded that the act in question is general in form. It operates uniformly upon all persons, subjects, and localities within the class mentioned in the act.

It has long been recognized that salaries of county officers may be fixed upon a basis of population. There is no contention that this may not be done.

The contention is, however, that because there are other districts in the state which have a greater population for each district than the districts affected by the act, taking into consideration the number of judges therein, the classification made by the act is unreasonable and arbitrary.

But plaintiff overlooks and does not mention one part of the act going to make up the class of districts to be affected. The act provides that in order for its terms to apply to any judicial district, the district must have a population in excess of 200,000 and *also a city therein having a population in excess of 100,000.*

The contention of plaintiff in this regard is fully and completely answered by the decision of this court in Herndon, Judge, v. Anderson et al., 165 Okla. 104, 25 P. 2d 326. There an act of the Legislature establishing a superior court and providing for salaries of the judges of that court and payment thereof, in counties having a population of 33,000 and not exceeding 80,000, and having a city therein with a population of 18,000 and not exceeding 50,000, was assailed as being in violation of section 59, art. 5, of the Constitution. It was held that the act was not repugnant to said section of the Constitution, and was not repugnant to section 32, art. 5, nor section 46b of art. 5, of the Constitution. In the opinion it was said:

"We find nothing arbitrary and capricious in the act in making differences in population as the proper basis for classification for the creation of superior courts in the respective counties of the state. The classification appears to be reasonable and appropriate and bears a rational relationship to the subject-matter. The object which was sought to be attained reflects good faith. No narrow margin has been fixed. There is a substantial difference in population. It is marked with no indiscriminate classification. It is general in its application and is not essentially local or special. There is substantial merit in the classification. This was left to legislative discretion."

It may be noted that the provision requiring a county, the population of which came within the limits stated, to also have a city therein with a population of 18,000 and not exceeding 50,000, was held to be a material and proper element for the Legislature to take into consideration in arriving at the classification of counties to be affected by the act.

Furthermore, it may be noted that the fact that no provision was made for superior courts in counties having a greater population than 80,000 and with cities therein with a population in excess of 50,000 did not render that act unconstitutional. As to that question it was said:

"It was urged in the argument that this was an arbitrary classification and that counties with a population exceeding 80,000 would be unable to have a superior court and that no provision had been made for higher brackets. However, the classification as made was exclusively within the province of the Legislature. It might be anticipated that the Legislature would provide some other form of relief, if necessity required it, for such counties in the way of an additional district judge or by creating some other court in such county to take care of the business necessitated by the increase of such population. This is no supportive reason to suggest against the validity of the act in question."

The Herndon Case determined, contrary to the writer's view: (1) That a county is but a political subdivision of the state, subject to an unqualified legislative control except as restrained by the Constitution. (2) That all state taxes

are levied and collected under and by authority of legislative acts. (3) That the Legislature may establish superior courts in certain counties and provide for their support, in whole or in part, by the counties in which such a court may be located. (4) That such an act establishing such a court and locating it within a county is not a special or local law, but a general one. (5) This decision was cited and approved in Chicago, R. I. & P. R. Co. v. Excise Board, 167 Okla. 414, 30 P. 2d 171, Excise Board v. Chicago, R. I. & P. R. Co., 168 Okla. 523, 34 P. 2d 268; Excise Board v. St. Louis-San Francisco Ry. Co., 176 Okla. 641, 57 P. 2d 261.

In State ex rel. Lawler v. Grant (Wash.) 34 P. 2d 355, the Supreme Court of Washington granted a mandamus to compel the payment by the county commissioners out of a salary fund of salaries of superior court judges, who were both state and county officers. This case cited with approval the case of In re Salary of Superior Court Judges, 82 Wash. 623, 144 P. 929, which was cited and approved by the Supreme Court of Oklahoma in 165 Okla. 110, 25 P. 2d 331.

In State ex rel. Pischue v. Olson (Wash.) 21 P. 2d 516, the Supreme Court of Washington held that where the Legislature created extra judges and increased the filing fees to pay them, the act was unconstitutional because it violated an article of the State Constitution providing that the salaries of the judges should be paid by the state and the counties, and that under the fee system the amount of pay was uncertain.

In Steiner v. Sullivan (Minn.) 77 N.W. 286, the court fully considered all the briefs and held constitutional an act of the Legislature providing that the counties should pay to each of the district judges an additional salary of $1,500 annually. This case was cited with approval by our court in the Herndon Case. The only distinction between that act and the question before us is that in the Minnesota case the counties were directed to pay the additional salary out of the general county fund.

In Clark v. Hammond (Ga. 1910) 68 S. E., 600, the court held an act similar to the one before us unconstitutional as being violative of a provision of the Georgia Constitution requiring the salaries of the judges of the superior courts to be paid out of the state treasury, exclusively, and which further provided that they should not receive any other pay of any kind. This case is not in point because of the peculiar constitutional provisions of that state.

In Jones v. Alexander (Tex. Cr. App. 1933) 59 S. W. 2d 1080, the court held constitutional an act providing $1,500 per annum to be paid by the counties to the district judges for their services as members of the juvenile board of the county, and went on to say that the Constitution placed no limitation upon the Legislature as to the amount of salaries to be paid district judges where some reasonable standard for fixing such salaries is used, and that the Legislature had the right to direct that they be paid from the funds of the county, or from any other public funds.

In Milwaukee County v. Halsey (Wis.) 136 N. W. 139, there was considered an act providing an additional $250 per month to be paid by Milwaukee county where the judges received their annual salaries from the state. It was contended that these payments were illegal, but the court, in a voluminous opinion, held just as in the Herndon Case, supra, citing numerous authorities.

In Petition of Breidenbach (Wis. 1934) 252 N.W. 366, it was held that a statute authorizing counties of a certain population to pay circuit judges an additional salary out of the county treasury was held valid, citing numerous cases.

In Stone v. State (Ala. 1924) 101 So. 58, there was considered an act authorizing payment to the judges of $4,000 out of the state treasury and $3,000 out of the county treasury. Mandamus was brought to compel the county treasurer to pay. The act was held to be constitutional and certiorari was denied by the Supreme Court, 101 So. 62.

In State ex rel. Simmons v. Lee (Fla. 1935) 160 So. 886, a writ of mandamus was issued under an act which provided that the district judges' salaries should be $5,000 from the state and an additional $1,000 from the county. Action was brought to compel the comptroller to transfer a sum to meet such salaries from the emergency fund of the county to the general fund. The act was attacked as unconstitutional, but it was held not to violate any provision of law of the Constitution.

For further cases, see American Digest System, "Judges, Key No. 22."

It has many times been held that an act of this kind is a general act and not special. Publication of notice of intention to introduce the act was not necessary and was not required under section 32, art. 5, of the Constitution. Herndon, Judge, v. Anderson et al., supra.

A more serious question is suggested in connection with the second proposition, which we now consider.

The proposition in substance is that the Legislature was without power to require the appropriation and expenditure of county funds for a state purpose, namely, payment of salaries of state officers.

A similar question was involved in Herndon v. Anderson et al., supra. Therein the entire salary of the judge of the superior court created by the act there involved was required to be paid by the counties for which such courts were created.

This court did not specifically hold that judges of such courts were state officers. It did point out, however, that the superior courts created by said act unquestionably exercised both state and county functions. So, then, do district courts. Many of the functions and much of the work of the district courts have to do with county matters.

In the Herndon Case, supra, it is held that under our system of government a county is but an unvoluntary, subordinate political subdivision of the state created to aid in the administration of governmental affairs of the state, and though possessed of a portion of the sovereignty, it has no inherent powers. All the powers entrusted to it are the powers of the sovereignty which created it. It cannot of itself impose taxes. Its power so to do is derived from the state. A county is without power to create or establish a court fund. The authority, therefore, and the method of raising the fund must come from the state acting through the Legislature. The power to create the fund being in the Legislature, it follows that the control of the fund is a legislative function in the absence of constitutional inhibitions. The Herndon Case, supra, cites Steiner v. Sullivan, 74 Minn. 498, as authority supporting the power of the Legislature to require the county to pay the salary of a superior court judge. That case is more directly in point in this case than in the Herndon Case. The identical question is involved except that it does not appear that the additional salary of the district judge of Ramsey county was to be paid out of a court fund such as we have in this state. There a special tax was imposed, and the act was upheld. Therein it is said:

"The fact that the judges of the district court of the county of Ramsey belong to the judicial department is no reason why the Legislature might not make the payment of a part of their salaries as a charge on the county."

In Herndon v. Anderson et al., supra, substantially the same authorities were relied upon to strike down the act there involved as in the instant case. Plaintiff refers to Steiner v. Sullivan, supra, as an ancient case, and relies largely upon Shelby County v. Six Judges (Tennessee) as followed in Colbert v. Bond, 110 Tenn. 370, 75 S. W. 1061, and Cotham v. Coffman, 111 Ark. 108, 163 S. W. 1183. But this court, in Herndon v. Anderson, supra, distinguished those cases and declined by the vote of a divided court to follow those decisions now presented a second time.

It does not appear that the provisions of the act here involved contravene any of the provisions of the Constitution.

There was no error in sustaining the demurrer to plaintiff's petition and dismissing the cause.

Judgment affirmed.

BAYLESS, C. J., and CORN, GIBSON, HURST, DAVISON, and DANNER, JJ., concur. WELCH, V. C. J., and OSBORN, J., dissent.