## KING v. STATE.

### No. A–12049.

Criminal Court of Appeals of Oklahoma.
April 7, 1954.
Rehearing Denied May 26, 1954.

Lee Williams, Oklahoma City, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., J. Walker Field, Asst. Atty. Gen., for defendant in error.

BRETT, Judge.

This is an appeal by L. S. King, plaintiff in error, defendant below, from a judgment and sentence entered in the county court of Comanche county, Oklahoma, wherein the defendant was charged by information alleging that he had violated the provisions of Title 47, § 125.9 O.S.Supp. 1953, by unlawfully placing, maintaining and displaying an unauthorized and prohibited sign upon the back side of an authorized street intersection stop sign, the sign on the back thereof being identical in size and shape of the opposite side, and containing the words, "Teakell's Grocery, Featuring Good Meats, 1309 So. 9th". The aforesaid sign was placed on the back side of the standard of said street intersection stop sign under the authority of a certain contract by and between the defendant and the city of Lawton, Oklahoma. These allegations of fact are admittedly true, as agreed to by stipulation of the parties. The defendant was tried on said charge by County Judge W. S. Harper without a jury, found guilty, and his punishment fixed at a fine of $25, and judgment entered accordingly, from which this appeal has been perfected.

The state contends that said sign not being in aid of traffic control but being entirely commercial advertising constitutes a violation of the provisions of Title 47, § 125.9, O.S.Supp. 1953, reading as follows, to wit:

"No person shall place, maintain, or display upon or in view of any highway, any unauthorized sign, signal, marking, or device which purports to be or is an imitation of, or resembles an official traffic control device or railroad sign or signal, or which attempts to direct the movement of traffic or which hides from view *or interferes with the effectiveness of any official traffic control* device or any railroad sign or signal, *and no person shall place or maintain, nor shall any public authority permit upon any street or highway any traffic sign or signal bearing thereon any commercial advertising.* This shall not be deemed to prohibit the erection upon private property adjacent to highways of signs giving useful directional information, and of a type that cannot be mistaken for official signs."

It is obvious that the foregoing statute is a clear and unambiguous expression of legislative policy against any type of device, sign or thing which interferes with the effectiveness of any official traffic control device or any railroad sign or signal, and definitely establishes the legislative policy that no person shall place or maintain, nor any public authority permit upon any street or highway any traffic sign or signal bearing thereon any commercial advertising, Title 47, § 125.9, O.S.Supp. 1953.

The said signs are not on private property but on the streets and highways of the city of Lawton, Oklahoma, affixed to the back side of stop signs at street intersections. The prohibitive language of the statute is all inclusive, as to any person maintaining and "any public authority" permitting "upon any street or highway any traffic sign or signal bearing thereon any commercial advertising". This prohibition does not exclude the back or side of said traffic control devices from its operation. In this connection it is contended by the defendant the sign herein involved was not placed on the traffic control sign or signal but was on the same post on the back side thereof and would not be visible to one approaching from the stop sign side of said traffic control, that it was merely attached to the same post, and was not an imitation of or a resemblance of an official traffic sign and that it says nothing about traffic direction, hence it could not constitute a violation of the provisions of Title 47, § 125.9, O.S. Supp. 1953. This contention completely overlooks the foregoing provision with reference to the prohibition in regard to any commercial advertising, and in the language of the Attorney General "is seeking by a technical play upon words to escape the plain prohibition by the statutes of any person using or placing upon any traffic sign or signal, commercial advertising". The defendant clearly overlooks the fact that at a four way stop intersection at least two of said signs would clearly be visible possibly as shown by Exhibit No. 2 offered by the defendant with a picture of Hopalong Cassidy advertising Bond Bread which two signs at such a stop would appear diagonally across the street intersection and would certainly "interfere with the effectiveness of said official traffic control devices at such an intersection." Such a display would certainly distract the attention of one approaching the intersection. The distracting effects would be true on all traffic directional devices bearing commercial advertising even if located in the middle of the block.

These stop and traffic control signs under the contract with the municipality of Lawton would be used for said advertising purposes at a rental fee to the city of $2 per year. We are not unmindful that towns and cities are in need of revenue and that this source of revenue might be of substantial help in meeting the problems of municipalities. Still we are more mindful that the loss of one life of either a child or adult by reason of the distracting nature of commercial signs would not justify the revenue thus raised. We are of the opinion that the legislature had the public safety in mind in establishing the policy as evidenced by the statute in question. Human values should always be placed ahead of revenues. Moreover to permit such signs to be placed on the back of said traffic devices would encourage the oversale and installation of such signs, stop and otherwise, to obtain the revenue where they were really not needed and thus they would become a hindrance to traffic movement and control, if not an outright nuisance. In fact such signs could develop into what might be termed a municipal revenue racket.

■ The defendant further relies on § 125.3, Title 47 O.S.Supp. 1953, reading in part as follows:

"(a) Local authorities in their respective jurisdictions shall place and maintain such traffic control devices upon streets and highways under their jurisdiction *as they may deem necessary to indicate and to carry out the provisions of this Act* or local traffic ordinances or to regulate, warn, or guide traffic."

But this provision does not authorize the municipalities of Oklahoma to install such commercial signs on the streets under its control; it merely authorizes the installation of traffic control devices under their jurisdiction, and to carry out the provisions of this Act and to indicate, warn or guide traffic. Certainly by no stretch of logic can it be said that this last provision includes an authorization to the local public authority to violate the all inclusive prohibitive provisions of § 125.9, Title 47 O.S.Supp. 1953.

■ The legislature in Title 47, § 125.9, O.S.Supp. 1953, clearly expressed its policy

to prohibit all commercial advertising on all the streets and highways and to prohibit the authorization thereof by any public authority. There is no ambiguity in the language of the statute, hence there is no need for resort to rules of construction. It has been repeatedly held by both this court and the Supreme Court of Oklahoma that, where the language of a statute is clear and unambiguous, the statute must be held to mean what it plainly expresses, and no room is left for construction, and interpretation and courts cannot search for its meaning beyond the statute itself, for there is nothing to construe. Sledge v. State, 40 Okl.Cr. 421, 269 P. 385; State v. Dabney, 77 Okl.Cr. 331, 141 P.2d 303; Woods v. Phillips Pet. Co., 207 Okl. 490, 251 P.2d 505; Jenkins v. Frederick, 208 Okl. 583, 257 P.2d 1058. Such is the situation in the case at bar, the statute speaks for itself in unmistakable terms.

It is elementary that the control over the streets and highways within corporate limits of municipalities is reserved in the state, and cities and towns exercise delegated authority to regulate the use of the streets and they can exercise only such control as has been delegated by the state. Ex parte Duncan, 179 Okl. 355, 65 P.2d 1015; Martin v. Rowlett, 185 Okl. 431, 93 P.2d 1090. This court said in Byars v. State, 2 Okl.Cr. 481, 499, 102 P. 804, 812:

> "The Constitution of Oklahoma expressly reserves to the state control over all public highways, including the roads, streets, and alleys of its municipalities. The opening, construction and maintenance of public highways is purely a governmental function, whether done by the state directly or by one of its municipalities, for which the state is primarily responsible."

Continental Casualty Co. v. Lolley, 193 Okl. 22, 140 P.2d 1014. It thus appears that the provisions of § 125.9 of Title 47, O.S. Supp. 1953, prohibiting any public authority to permit upon (whether front or side or back) any street or highway any traffic sign or signal bearing thereon (front, side or back) any commercial advertising, constitutes a prohibition against any municipality or any other public authority from

so doing either by contract or otherwise. The contract herein entered into by and between the city of Lawton, Oklahoma, and the defendant is void as being in violation of law, and the performance of the acts complained of by the defendant was a violation of Title 47, § 125.9, O.S.Supp. 1953.

In view of the need of municipalities for revenue for the doing of many legitimate things we had first hoped to find a basis upon which this conviction could be reversed, but mature study of the objects of the statute, Title 47, § 125.9, clearly convinces us not only of the wisdom of the legislative policy but the power of the legislature to enact the statute in question. For all the reasons set forth herein the judgment and sentence is accordingly affirmed.

POWELL, P. J., and JONES, J., concur.