OKLAHOMA CITY, a municipal corporation, Plaintiff in Error,

v.

Harold GRIFFIN, Treasurer of the City of Oklahoma City and Duane Osmus, Municipal Traffic Court Clerk of the City of Oklahoma City, Defendants in Error,

and

State of Oklahoma ex rel. State Board of Education, Intervenor,

and

Oklahoma Motor Club, Inc., a Civic, Non-Profit Oklahoma Corporation, Intervenor.

No. 40968.

Supreme Court of Oklahoma.

May 11, 1965.

Rehearing Denied June 22, 1965.

Roy H. Semtner, Municipal Counselor, Carroll E. Gregg, Asst. Municipal Coun-

selor, for plaintiff in error, The City of Oklahoma City.

Charles Nesbitt, Atty. Gen., Charles L. Owens, Asst. Atty. Gen., for intervenor, State of Oklahoma.

Harry Johnson, Oklahoma City, for Oklahoma Driver Education Ass'n, amicus curiae.

J. Harold Land, Oklahoma City, for intervenor, Oklahoma Motor Club, Inc.

HALLEY, Chief Justice.

The issue in this appeal may be described generally as the constitutionality of Enrolled Senate Joint Resolution (S.J.Res. No. 24) adopted by the Twenty-Ninth Oklahoma Legislature, with reference to Driver Education. See S.L. 1963, pages 753–756, both incl.; 70 O.S.Supp. 1963, §§ 1210.-21–1210.33, both incl. It arose when plaintiff in error, hereinafter referred to as plaintiff, sought to restrain and enjoin the defendants in error, hereinafter referred to as defendants, from complying with said Resolution's provisions, particularly those of its Section 9, which reads as follows:

> "From each fine collected or bail forfeited as a penalty for violation of the Motor Vehicle Code of this state or as a city ordinance relating to the operation of motor vehicles, except offenses relating to parking or registration, there shall be separated an amount of Two Dollars ($2.00) which shall be transmitted at the end of the month by the official collecting such fine to the county treasurer who shall in turn deposit such amounts with the State Treasurer for credit to the Driver Education Fund hereby created, which fund shall be reserved for the exclusive use and expenditure by the State Board of Education to assist in defraying the cost of driver education as provided in this resolution."

After appropriate pleadings by the parties, including the intervenors named in the above caption, defendants filed a motion for judgment on the pleadings; and the parties agree, in effect, that the court's rul-ing might be determined by resolving the above stated issue after submission to the court of their briefs on it.

Thereafter, in its judgment sustaining defendants' motion, the court specifically held S.J.Res. No. 24, constitutional, in accord with its "Memorandum" concerning the various aspects in which said Resolution was alleged to be unconstitutional. After overruling of its motion for a new trial, plaintiff perfected this appeal.

Plaintiff urges five propositions for reversal but we will only discuss their second, which is:

> "Enrolled Senate Joint Resolution No. 24 is a special law enacted contrary to Article 5, Section 46 of the Oklahoma Constitution."

We think that Article V, Section 46, of the Oklahoma Constitution controls our situation here. The applicable parts of this section are as follows:

> "The Legislature shall not, except as otherwise provided in this Constitution, pass any local or special law authorizing:
>
> * * * * * *
>
> "Regulating, the affairs of counties, cities, towns, wards, or school districts;
>
> * * * * * *
>
> "Creating offices, or prescribing the powers and duties of officers, in counties, cities, towns election or school districts;
>
> * * * * * *
>
> "Remitting fines, penalties and forfeitures, and refunding moneys legally paid into the treasury;
>
> * * * * * *
>
> "For limitation of civil or criminal actions; * * *."

The collection and funding clause of Resolution No. 24, now 70 O.S.Supp. 1963 § 1210.29, heretofore set out, exempts towns and villages from the separation feature, but the citizens of towns share in the benefits of this legislation by virtue of their public schools participation therein.

We think the vice of 70 O.S.Supp. 1963 § 1210.29, is that a percentage of fines and forfeitures collected in cities and counties is to be used to finance driver education in non-contributing villages and towns of Oklahoma.

In Fenimore v. State ex rel. Commissioners of the Land Office, 200 Okl. 400, 194 P.2d 852, we said:

"Special laws, prohibited by Sections 32, 46 and 59, Article 5, of the Constitution of Oklahoma, are those which apply to less than the whole of a class of persons, entities or things standing upon the same footing or in substantially the same situation or circumstances and hence do not have a uniform operation."

See also Barrett et al. v. Board of Commissioners of Tulsa County et al., 185 Okl. 111, 90 P.2d 442.

We hold that Section 9 of Enrolled Joint Senate Resolution 24 of the 1963 Legislature is unconstitutional.

In view of our holding on this point we do not deem it necessary to discuss the other propositions raised by the plaintiff.

The judgment of the trial court is reversed in so far as it holds Section 9 constitutional.

WILLIAMS, IRWIN and BERRY, JJ., concur.

JACKSON, V. C. J., concurs specially.

DAVISON, BLACKBIRD and HODGES, JJ., dissent.

JACKSON, Vice Chief Justice (concurring specially).

My concurrence is based largely upon Proposition IV of Oklahoma City's brief wherein it is asserted:

"Enrolled Senate Joint Resolution No. 24 embraces a general subject not expressed in its title; and its body is broader than said title, both in violation of Article 5, Section 57 of the Oklahoma Constitution."

Art. 5, Sec. 57, Okla.Const., provides in part:

"Every act of the Legislature shall embrace but one subject, which shall be clearly expressed in its title, * * * Provided, That if any subject be embraced in any act contrary to the provisions of this section, such act shall be void only as to so much of the law as may not be expressed in the title thereof."

In Section 9 of S.J.R. No. 24 it is provided (70 O.S.Supp.1963, § 1210.29) that $2.00 shall be separated from certain fines and forfeitures collected—

"* * * which shall be transmitted at the end of the month by the official collecting such fine to the county treasurer who shall in turn deposit such amounts with the State Treasurer for credit to the Driver Education Fund hereby created, which fund shall be reserved for the exclusive use and expenditure by the State Board of Education to assist in defraying the cost of driver education as provided in this resolution."

From the foregoing it is clear that the Driver Education Fund is created by the Legislature; or the fund is created by county and municipal officials and received by county treasurers for deposit with the State Treasurer to be credited to the Driver Education Fund. By the Resolution county and municipal governments are deprived of revenues which had theretofore been used by these governments in financing their obligations. The loss of this revenue would be of concern to officials of municipal and county governments charged with the responsibility of financing these governments, yet they were not alerted to this proposed diversion of county and municipal revenues by the title of S.J.R. No. 24. The Resolution is identified and explained by its title as follows:

"A Joint Resolution relating to driver's education; *providing the State Board of Education with power*

*to promulgate certain rules and regulations creating a driver education fund;* providing financial assistance to schools offering such course; and fixing effective date of resolution." (emphasis supplied)

From the title it would appear that the State Board of Education will create the fund with school funds or school revenues within their control. This title would not alert county and municipal officials to the fact that some of their revenues would be diverted by legislative approval of the Resolution.

In State ex rel. Short v. Johnson, 90 Okl. 21, 215 P. 945, the reason and purpose of Art. 5, Sec. 57, Okla.Const., was carefully considered and explained, and in the third paragraph of the syllabus we held:

"Inasmuch as the supreme legislative power of the state, including the power to reject legislative acts, is reserved to the people by sections 1, 2, and 3, art. 5 of the Constitution, one primary object of the above provision of section 57, art. 5, is that the title of an act shall bear clear notice, not only to the legislative body, but to the electorate of the state, of what an act may contain."

Since the title of S.J.R. No. 24, as quoted, would not bear clear notice to the legislative body and to the electorate that the Driver Education Fund would be created in substantial part by a diversion of county and municipal revenues, I am of the view that the Resolution, insofar as it requires the separation of $2.00 from each fine collected or bail forfeited for violations of the Motor Vehicle Code and city ordinances, is violative of Art. 5, Sec. 57, Okla. Const., supra. I therefore agree with the majority that the judgment of the trial court must be reversed in so far as it holds Section 9, supra, constitutional.

I am authorized to state that WILLIAMS, IRWIN and BERRY, JJ., concur in the views herein expressed.

BLACKBIRD, Justice (dissenting).

I cannot concur in the majority opinion. It holds Enrolled Senate Joint Resolution No. 24 unconstitutional apparently on the sole ground that it is a special law. I do not agree. I think the present attack on said Resolution should fail upon all of the grounds upon which its constitutionality is assailed.

The Majority's conclusion that Senate Joint Resolution No. 24 (hereinafter referred to merely as "the Resolution" or "S.J.R. 24") is a special law, stems from the fact (called to our attention under Plaintiff's Proposition II) that the ordinances, from whose violation the Drivers Education Fund derives its money, are "city" ordinances—with no mention in the Resolution of town ordinances, or contributions to said Fund from their violation. Plaintiff complains that the Resolution does not require traffic offenders in villages and towns to help pay the cost of the Drivers Education program, yet it does not exclude people in those localities from receiving such education and the accompanying benefits of the program. Plaintiff's theory, apparently upheld by the Majority is that, in this, the Legislature has placed violaters of city ordinances in a special and artificial class, with no logical reason for such a classification to exist. If this is correct, and, for the purposes of S.J.R. 24, cities, towns and villages, are " * * * entities * * * standing upon the same footing or in substantially the same situation * *" then, clearly, under the definition of a "special law" that the Majority quotes from Fenimore v. State ex rel. Commissioners of the Land Office, 200 Okl. 400, 194 P.2d 852, this Resolution violates Article 5, section 46 of our Constitution. But, in my opinion, cities, towns, and villages do not stand "upon the same footing or in substantially the same situation * * *" in many respects.

Our Legislature has, with good reason, often classified such municipal units differently for many legislative purposes; and, in my opinion there is good, logical reason

for classifying them differently in regard to drivers education. By statute, a village or town must have a certain minimum population before it may become a city (see Tit. 11 O.S.1961, sec. 551); and a city's larger population creates many conditions which do not exist in towns and villages. Our Legislature has recognized this in the passage of many laws applicable to geographical, and/or municipal, units containing larger populations, that do not purport to apply to less populous units. For examples of this, see Bell v. Crum, 188 Okl. 67, 106 P.2d 518, and Lowden v. Oklahoma County Excise Board, 186 Okl. 706, 100 P.2d 448. In the latter case, we recognized, as a matter of common knowledge, that counties coming within the classification specified in the Act there involved "have much more need for the services of the agencies * * *" provided by said Act * * *" than counties with less congestion of population"; and further said: "The congestion of population is closely related to the object to be attained by the legislation." Likewise, we know that congestion of population bears a direct relationship to the number and character of traffic offenses, and consequently, to the need of driver education. In Sawyer v. Barbour, 142 Cal.App.2d 827, 300 P.2d 187, 193, which involved the constitutionality of an act to reimburse California's General Fund for money appropriated therefrom, for driver education, the court said:

"A law is general when it applies equally to all persons embraced in a class founded on some natural, intrinsic, or constitutional distinction. It is special if it confers particular privileges or imposes peculiar disabilities or burdensome conditions in the exercise of a common right on a class of persons arbitrarily selected from the general body of those who stand in precisely the same relation to the subject of the law. Serve Yourself Gas, etc., Ass'n, v. Brock, 39 Cal.2d 813, 820, 249 P.2d 545. The prohibition against special legislation does not preclude classification, but only requires that the classification be reasonable. * * *"

This court recognizes substantially the same criteria, as indicated above, for determining legislative compliance with Art. 5, sec. 46, supra. See Wilkinson v. Hale, 184 Okl. 165, 86 P.2d 305, 307. In the wording of S.J.R. 24, the Legislature has specifically recognized that the proper education of motor vehicle drivers "* * * would inevitably become a major factor in the long range curtailment of motor vehicle accidents * * *". Since more of such accidents occur in and around cities where population is congested and motor vehicle traffic is concentrated, it goes without saying that the greater need for driver education also exists there. In view of these facts, I think it is altogether logical and reasonable to place such urban areas in a different category, or classification, than towns, villages, and rural areas. If so, then, according to the above cited authorities, S.J.R. 24, is not a special law; and, giving effect to the presumption of constitutionality to which acts of the Legislature are entitled (Wright v. State, 192 Okl. 493, 137 P.2d 796, 797), we cannot correctly hold it violative of our Constitution's proscription against such laws.

In its Proposition I and V, plaintiff charges that the Resolution in question is a revenue bill and "a revenue raising measure." Its argument, under Proposition I, is that, because S.J.R. 24 originated in the Senate, it violates the requirement of the Oklahoma Constitution's Art. 5, sec. 33, that: "All bills for raising revenue shall originate in the House of Representatives. * * *" The Resolution in question raises, or creates, no revenue. It has the effect of merely ear-marking for a particular purpose, funds that are already accumulating under the Motor Vehicle Code, and city ordinances relating to the operation of motor vehicles. Consequently the quoted provision of Art. 5, sec. 33, supra, is not applicable to it. In this connection, see the discussion in Anderson v. Ritterbusch, 22 Okl. 761, 98 P. 1002.

Assuming, as plaintiff points out, that before enactment of S.J.R. 24, funds collected as fines and forfeitures for the violation of city ordinances could, under the provisions of Tit. 11 O.S.1961, sections 726, 751, 797, 916, 957.9 and 958.10, be used by the enacting cities in the operation of their own municipal governments, it does not follow, as plaintiff represents, that "it most certainly is not possible * * *" to allocate, by said resolution's enactment, a portion of such funds to help defray the expense of driver education, to which plaintiff refers as a "State expense". Certainly, the State Legislature, is not lacking in the power to do this. It is well recognized that control over the streets and highways, and similarly over the regulation of motor vehicular traffic thereon, within the corporate limits of its municipalities is reserved to the state, except in so far as the Legislature delegates such control to said municipalities. See Continental Casualty Co. v. Lolley, 193 Okl. 22, 140 P.2d 1014; Martin v. Rowlett, 185 Okl. 431, 93 P.2d 1090; King v. State (Okl.Cr.) 270 P.2d 370. Such regulation has a direct bearing upon public safety and welfare, and is a matter not only of public interest, but statewide concern, and is a proper subject for the exercise of the State's police power. Driver education comes within the same category. As said in City of Claremore v. Oklahoma Tax Commission, 197 Okl. 223, 169 P.2d 299:

"* * * The state has the power to require municipal subdivisions to perform certain duties of state concern. Where such obligation is incurred in the discharge of a duty which is of state or public interest, the city cannot object thereto upon the ground that such duty was imposed without the city's consent. * * * (Citing authorities)

"The powers of municipal corporations being derived from the state, through the legislature, such powers may be granted, enlarged, or entirely *withdrawn* at will. City of Sapulpa v. Land, 101 Okl. 22, 223 P. 640, 35 A.L.R. 872."

The above enunciates some of the principles followed in states whose constitutions are not materially different from Oklahoma's. See, for instance, State ex rel. City of Minot v. Gronna, 79 N.D. 673, 59 N.W.2d 514, 529–541, and McQuillin, Municipal Corporations (3rd Ed.) Vol. 2, sec. 4.95. Even if it be conceded that what is done with fines collected for the violation of municipal ordinances is a municipal affair, I think that S.J.R. 24 affects this only incidentally in the accomplishment of a proper object of extra-municipal, or state-wide, concern, i. e., driver education; and therefore it may rightfully apply even to such collections in charter cities. In this connection, notice the discussions in State ex rel. Burns v. Linn, 49 Okl. 526, 153 P. 826, Ann.Cas. 1918B, 139, and Wilson v. Walters, 19 Cal. 2d 111, 119 P.2d 340, 344.

In its Proposition V, plaintiff states, in substance, that the $2.00, sec. 9, of the Resolution prescribes to be "separated" from fines and forfeitures, and transmitted by the collecting official and deposited for credit to the Driver Education Fund, is in reality a tax for common schools "levied and deduced by implication." Plaintiff's argument that this provision assesses, or levies, a tax, is based on reasoning that since the minimum fine assessed by most cities and counties is $1.00 (irrespective of costs), if, as section 9 reads, "an amount of Two Dollars ($2.00) * * *" is "separated" from each fine collected, then the minimum fine must be raised from $1.00 to at least $2.00, so that said Section can be complied with. Defendants, on the other hand, speak of S.J.R. 24, as requiring only "a portion" of fines collected by cities to go into the Driver Education Fund. Thus, as the issue is joined, the effect of section 9, as requiring a new tax, or assessment, to be collected by the courts of this State, depends upon whether said section necessitated increasing the minimum fine to at least $2.00 in order to afford the transmittal of that amount to the Driver Education Fund. In

my opinion section 9, supra, can be given no such interpretation. I think the amount to be separated "from" the fines, referred to therein, necessarily limits said section's application to fines of more than $2.00. I am of the opinion that this interpretation of said section deprives plaintiff's theory of its validity, and is a complete answer to its Proposition V.

Plaintiff contends, under its Propositions No. III and IV, that S.J.R. 24, violates certain provisions of Art. 5, section 57 of the Oklahoma Constitution. This Resolution is said, first, to violate the following portion of said section:

"* * *; and no law shall be revived, amended, or the provisions thereof extended or conferred, by reference to its title only; but so much thereof as is revived, amended, extended, or conferred shall be re-enacted and published at length: * * *."

Plaintiff points out that S.J.R. 24, changes the distribution, and/or distributive, depository of a portion of the fines and forfeitures collected in cities and counties under the hereinbefore referred to sections of Title 11, supra, for the violation of the laws and ordinances therein referred to. Because of this, it seems to be plaintiff's position that the subject Resolution is an "amendatory law" within the purview of Art. 5, sec. 57, supra. I do not agree. It is obvious that S.J.R. 24, is a new, original, or independent Act, complete in itself. It does not have the form of an amendatory Act. Numerous opinions of this court, and many others, support the following statement in the Annotation at 5 A.L.R.2d 1270, 1288:

"A statute complete in itself, whether it purports, or does not purport, to be amendatory, has been uniformly held not to be invalidated by the constitutional requirement that amended acts or provisions be re-enacted in full, usually upon the ground that such requirement is not applicable to such a statute, * * *"

It was never intended by constitutional provisions, such as the one here dealt with, that every law containing provisions affecting incompatible provisions in a previous statute, or statutes, should set out those statutes in full. After noting the common practice of the legislature of that state of modifying existing statutes by subsequent original ones not specifically amending them, the Supreme Court of Washington, in Mahler v. Tremper, 40 Wash.2d 405, 243 P.2d 627, 631, noted that that was "not the kind of thing prohibited" by that State's Constitution (Art. II, sec. 37), and quoted an excerpt from Ex parte Pollard, 40 Ala. 77, containing the following:

"* * * If this were so, it would be impossible to legislate. The constitutional provision reaches those cases where the act is strictly amendatory or revisory in its character. Its prohibition is directed against the practice of amending or revising laws, or other alterations, which without the presence of the original act are usually unintelligible. If a law is in itself complete and intelligible, and original in form, it does not fall within the meaning and spirit of the Constitution."

As I am of the opinion that Art. V, sec. 57, supra, does not apply to a measure like the one involved here, plaintiff's argument under its Proposition III, presents no ground for reversal.

Plaintiff's claim, under its Proposition IV, that S.J.R. 24, violates Art. V, sec. 57, is based on the wording of its title. Plaintiff first says the title is misleading in representing that the State Board of Education, rather than the Legislature, creates the Driver Education Fund. Plaintiff points out that sec. 3 (sec. 1210.23, Tit. 70, supra) of the Resolution provides that the State Board (instead of creating the Driver Education Fund) is empowered merely to approve an administrative budget prepared by the State Superintendent of Public Instruction "from funds made available under this joint resolution * * *". The cases plaintiff cites in this part of its argument

are those holding that the subject expressed in the title of a legislative act limits its scope, that the provisions of such an act that are broader than its title are unconstitutional, and Walker-Taylor Co. v. Board of Com'rs of Oklahoma County, 125 Okl. 226, 257 P. 324, which held:

"Where an act of the Legislature falls within section 57, art. 5, of the Constitution of Oklahoma, requiring that the subject-matter thereof be clearly expressed in the title, and such title merely relates to matters wholly incidental to the subject-matter contained therein, and in no manner discloses the vital object and character of the main purposes sought in such act, such title fails to meet the requirements of section 57, art. 5, of the Constitution, and is therefore invalid."

Defendants contend, in substance, that on the basis of the considerations discussed in Nelson v. State, Okl.Cr., 288 P.2d 429, the title of the subject Resolution does disclose its object, or purpose—that of establishing a driver education program, rather than relating to matters wholly incidental to the program. This court, in Rupe v. Shaw, Okl., 286 P.2d 1094, 1100, 1101, was referring to substantially the same principles cited by defendants in the following discussion of National Mutual Casualty Co. v. Briscoe, 188 Okl. 440, 109 P.2d 1088, 1090:

"Therein it was said that the constitutional provision 'is satisfied if an act has a general subject fairly indicated by the title * * *'; that 'The title may be very general and need not specify every clause in the statute if * * * (they) * * * are reasonably cognate to the general subject expressed'; that 'to constitute duplicity of subject, an act must embrace two or more dissimilar and discordant subjects, that by no fair intendment can be considered as having any legitimate connection with or relation to each other'; and that 'The connection of relationship of the minor subjects need not be logical; it is enough that they are connected with and related to a single subject in popular signification.'"

The first phrase in the title of S.J.R. No. 24, indicates that it relates to the general subject of driver's education; and while one of the briefs filed herein suggests that said title was probably intended to contain a semicolon between the word "regulations" and "creating", and I recognize that the title here is inept to the extent that it gives the impression that the State Board of Education is provided with power to create a drivers education fund, yet I cannot say that the power section 3, supra, gives the State Board to approve budgets for the fund does not, in a sense, give it a certain power over, or sphere of control, or regulation, in setting it up, or, as it were, in "creating" the fund, at least insofar as financial records are concerned. Certainly the Board's power alluded to in the title, and provided for in the body, of S.J.Res. No. 24, cannot be said to lack, in "popular signification" or by "fair intendment", a logical relationship to the broad subject of driver's education and the natural and expected necessity of financing any such new program. In view of the foregoing, I am of the opinion that the second phrase in the title of S.J.R. 24, does not render it violative of Art. V, sec. 57's requirement that a legislative act embrace only one subject.

In this case, plaintiff had the burden, not only of overcoming the presumption of correctness which accompanies the judgments of trial courts on appeal to this Court, but also of overcoming the presumption of constitutionality that attaches to legislative enactments. As is obvious from the foregoing expression of my views, I do not think plaintiff has discharged this double, or dual, burden. In my opinion, the judgment of the trial court should be affirmed. I therefore respectfully dissent.

I am authorized to state that HODGES, J., concurs in my dissenting views.